No. 92-623

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

CLIFFORD BROWN,

       Petitioner and Appellant,

   v.

RICHARD A. MURPHY, INC.,

       Employer,

  and

STATE COMPENSATION MUTUAL
INSURANCE FUND,

       Defendant and Respondent.

**FILED**

NOV - 2 1993

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  Workers' Compensation Court of the State of Montana, The Honorable Timothy W. Reardon, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        John Houtz, Attorney at Law, Forsyth, Montana

    For Respondent:

        Charles G. Adams, Legal Counsel, State Compensation Mutual Insurance Fund, Helena, Montana

Submitted on Briefs:  April 30, 1993

Decided:  November 2, 1993

Filed:

_____
Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Clifford Brown appeals from a decision of the Workers' Compensation Court in which his request to rescind a compromise settlement that the parties had agreed upon was denied. The court concluded that Brown was not entitled to reopen the settlement agreement and that the insurer was not required to provide him with additional benefits.

We reverse.

The dispositive issue on appeal is whether the Workers' Compensation Court erred when it concluded that there were no grounds to allow rescission of the compromise settlement agreement.

Claimant Clifford Brown was injured during the course of his employment on two separate occasions--February 21, 1978, and December 2, 1985, while employed by Richard A. Murphy, Inc. The State Compensation Mutual Insurance Fund accepted liability and paid various benefits.

Following the 1985 injury, the State Fund notified Brown that it elected not to participate in the cost of a possible third-party claim for damages, but that, pursuant to § 39-71-414(2)(c), MCA (1983), it retained a 50 percent subrogation interest in any recovery.

Brown did pursue a third-party claim in California and subsequently settled that claim for $55,000, which was less than policy limits.

In March 1990, following that settlement, Brown's counsel approached the State Fund about settling the workers' compensation

2

claims. At this time, Brown's entitlement to permanent partial disability benefits had not been determined by either agreement or adjudication, and there had been no determination of the State Fund's subrogation interest, if any, in the third-party settlement. However, based on the settlement amount and the attorney fees and costs associated with the settlement, the State Fund determined that the maximum subrogation interest it was entitled to was $18,666.67.

The parties eventually compromised Brown's claim, as well as the State Fund's subrogation interest. The State Fund agreed to pay to Brown $30,000 of "new money" and, as part of the compromise, the State Fund waived any subrogation interest in the third-party settlement. The petition for full and final compromise settlement which was submitted to the Department of Labor and Industry stated that Brown agreed to accept $33,662.50, of which $3,662.50 had already been paid, as a full and final compromise of his claim. Additionally, the State Fund stated that it waived its subrogation interest in the amount of $17,382.78. There is no explanation for the seventeen thousand dollar figure, as opposed to the $18,666.67 which the State Fund had previously calculated as its maximum subrogation interest. This agreement was signed by Brown on April 7, 1990, and the State Fund on May 1, 1990.

The department approved this compromise agreement on May 10, 1990, but altered some of the terms. The final order approving the compromise settlement stated that Brown was to receive in settlement of his claims the amount of $52,329.17, less $18,666.67

3

which "is subrogation due the State Fund." After deducting the amount previously paid to Brown, he was to receive a net settlement of $30,000. The language added by the department, while not materially altering the agreement, clarified that the settlement agreement took into account the subrogation interest that the State Fund believed it was entitled to receive.

Prior to the issuance of this order, however, the State Fund initiated a second agreement entitled "Compromise Settlement of Insurer's Subrogation Interest" which Brown signed on April 30, 1990. This agreement purported to settle a controversy regarding the State Fund's subrogation interest and stated that the insurer agreed to accept as its subrogation interest "the sum of zero dollars." This agreement was approved by the Department of Labor on June 29, 1990.

On June 7, 1990, one month after the Department of Labor's approval of the settlement agreement, but prior to its approval of the subrogation "waiver," this Court issued its decision in *Zacher v. American Insurance Company* (1990), 243 Mont. 226, 794 P.2d 335. *Zacher* construed the 1983 subrogation provision of the Workers' Compensation Act, which the parties agree is the controlling statute in this case. Applying the theory of equitable limitation on legal subrogation, this Court held that an insurer has no subrogation rights until a claimant has been made whole for his entire loss and any costs of recovery, including attorney fees. *Zacher*, 794 P.2d at 338.

4

Approximately a year later, on April 10, 1991, Larry Thomas, the supervising claims examiner for the State Fund, responded to an inquiry from Brown's attorney in which the terms of the settlement agreement were clarified. Thomas explained that Brown's case had been settled for $52,329.17, and from this the State Fund deducted its subrogation interest of $18,666.67, and the amounts already paid out in partial benefits. This left a net settlement of $30,000 which had been paid to Brown.

On September 3, 1991, Brown submitted a claim to the State Fund to recoup the $18,666.67 subrogation interest which Brown claimed was deducted and withheld by the State Fund in the compromise settlement. He asserted that he had to pay his attorney fees from the third-party recovery, and therefore, had not been made whole, which is a prerequisite for subrogation according to the decision in *Zacher*.

The State Fund denied Brown's claim on the basis that it had expressly waived any subrogation interest in Brown's third-party settlement and that there was nothing for it to refund.

Brown then petitioned the Workers' Compensation Court in December 1991, alleging that a subrogation interest in the amount of $18,666.67 had been "deducted" from the compromise settlement, and that, pursuant to the *Zacher* decision, this amount should be returned to him. Brown contended that the settlement agreement should be set aside on the basis that the parties were mutually mistaken regarding the State Fund's right to a subrogation interest

5

in Brown's third-party recovery when they entered into the agreement. Brown also added a claim for attorney fees alleging that the State Fund had acted unreasonably when it refused to pay his claim.

The Workers' Compensation Court entered its judgment on December 11, 1992, in which the court accepted the hearing examiner's findings of fact, conclusions of law, and proposed judgment. The court determined that Brown was not entitled to reopen the May 10, 1990, settlement agreement and was not entitled to further compensation or attorney fees. From this judgment, Brown appeals.

Did the Workers' Compensation Court err when it concluded that there were no grounds to allow rescission of the compromise settlement agreement?

Brown contends that the Workers' Compensation Court erred when it did not allow rescission of the settlement agreement and did not order the State Fund to reimburse Brown for the subrogation interest it retained. He argues on appeal that the *Zacher* decision controls the issue of whether the State Fund was entitled to a subrogation interest. He claims that he was not made whole in the third-party settlement, and therefore, the State Fund had no subrogation rights. However, based on the language contained in the settlement agreement, he asserts that money was deducted from the amount for which his claim was settled based on the State Fund's subrogation claim.

6

The arguments raised before this Court focus on two grounds for rescission--mutual mistake of fact and unilateral mistake of law. Brown contends that he is entitled to rescind the settlement agreement on the grounds of unilateral mistake of law because he was operating under a misapprehension of the law regarding the right to subrogation, and the State Fund was aware of his misapprehension. He claims that the State Fund knew of the impending decision in *Zacher* which would forbid a subrogation interest in this instance, and that is why the second agreement, which purported to waive any interest in the third-party settlement, was proffered by the State Fund. He also claims there was a mutual mistake of fact because, at the time the agreement was made, both parties were mistaken about the State Fund's right to subrogation.

The State Fund counters by claiming that the settlement agreement was an enforceable contract resulting from a compromise by both parties and the court correctly found no grounds for rescission. The State Fund insists that it waived its right to subrogation in the final agreement and this agreement, therefore, is not in conflict with *Zacher*. Furthermore, it contends that because Brown settled his third-party lawsuit for less than policy limits he was "made whole" and Brown has not demonstrated that *Zacher* would have changed the outcome of the compromise settlement.

The State Fund contends that since Brown failed to prove the requirements for unilateral mistake of law or mistake of fact, the

7

court had substantial evidence to conclude that Brown was not entitled to reopen the settlement and its conclusions should not be disturbed.

Factual findings by the Workers' Compensation Court are reviewed to determine whether they are supported by substantial evidence. *Francetich v. St. Comp. Mut. Ins. Fund* (1992), 252 Mont. 215, 827 P.2d 1279. In this instance, the Workers' Compensation Court did not directly address the allegations of mistake of fact, but found that Brown had failed to submit evidence of a unilateral mistake of law to justify reopening the agreement. With respect to an alleged unilateral mistake of law, we agree with the court's findings that there was no evidence of fraud, nor that Brown was unilaterally operating under a misapprehension of the law and the State Fund was aware of his misapprehension. There is no evidence that the State Fund knew of the outcome of the *Zacher* decision prior to the time that it was issued by this Court, and then allowed Brown to proceed with negotiations knowing that he misunderstood the status of the law with respect to subrogation rights.

Also, after considering Brown's arguments regarding mistake of fact, we conclude the evidence is similarly lacking on this point. Brown argues that the parties were mistaken about who had the right to the $18,666.67 subrogation interest. This was not a mistake of fact, however. Whether or not the State Fund was entitled to a subrogation interest in that amount is a question of law which,

8

pursuant to *Zacher*, depends on the claimant's status after a third-party settlement.

We conclude that the controlling issue in this case, which Brown raised before the Worker's Compensation Court, is whether the parties consented to the compromise agreement while laboring under a mutual mistake of law.

This Court has made clear that the law of contracts applies in construing and determining the validity and enforceability of a settlement agreement. *Wolfe v. St. Comp. Mut. Ins. Fund* (1992), 251 Mont. 217, 824 P.2d 240. Section 28-2-1711, MCA, provides that a party to a contract may rescind the contract if "the consent of the party rescinding or of any party jointly contracting with him was given by mistake," and § 28-2-408, MCA, clarifies that "[m]istake may be either of fact or law." Section 28-2-410, MCA, defines "mistake of law" and provides that a mutual mistake of law arises from:

> (1) a misapprehension of the law by all parties, all supposing that they knew and understood it and all making substantially the same mistake as to the law.

It is evident from the record before us that both parties to the contract were mistaken about the law regarding subrogation, each supposing that they knew and understood it and substantially making the same mistake. Because Brown, as the party seeking to rescind the agreement, consented to the agreement based on a mutual mistake of law, we hold that he is entitled to rescind the settlement agreement.

9

The Workers' Compensation Court did not directly address the allegation of mutual mistake of law in its findings and conclusions, other than to say that neither party had submitted authority for reopening a contract based on a mistake of law. It did conclude, however, "that at the time of negotiations and approval, two experienced counsel were both aware of the law in affect and negotiated the agreement based on their correct and mutual understanding of the law at that time." We agree that the parties entered into the settlement agreement based on a mutual understanding of the law in existence. We disagree that the parties' mutual understanding of the law was correct.

The evidence demonstrates that the bargaining process was based on the parties' belief that the State Fund had a subrogation right, even though the extent of that right had not been finally determined. From the face of the various documents, it is apparent that the $30,000 settlement amount was arrived at after considering the State Fund's maximum subrogation interest in the amount of $18,666.67. Furthermore, even though the final document purports to state that a subrogation interest was waived, the clarification memo from the State Fund's claims examiner a year later makes clear that the agreement was premised on an offset for the maximum subrogation interest against a settlement figure of $52,329.17. Our conclusion that the settlement agreement was premised on an understanding that the law entitled the State Fund to a subrogation interest in the third-party settlement is further confirmed by the testimony of both the claims examiner for the State Fund and the

10

attorney representing Brown in the settlement negotiations. Even though the State Fund claims that it "waived" its interest because it did not receive a portion of the third-party settlement, it is clear from the evidence presented that the subrogation interest was considered in the negotiation process.

When this Court decided *Zacher* in 1990, that decision did not change the law regarding subrogation rights. That decision construed the 1983 statute, which is the statute the parties considered during settlement negotiations. The applicable provision of the 1983 Workers' Compensation Act provides that an insurer is entitled to subrogation for all compensation and benefits paid to an injured worker if a third-party action results in a judgment in the claimant's favor. Section 39-71-414, MCA (1983). However, the statute is silent on the issue of whether this subrogation right can be asserted even if a claimant is not fully compensated for his injuries. In *Zacher*, 794 P.2d at 338, we addressed that question, and held that an insurer has no right to subrogation until a claimant has been made whole for his entire loss and any costs of recovery, including attorney fees. This decision did not change the law; it merely clarified that, pursuant to the 1983 law, the right to subrogation was subject to the theory of equitable limitation on legal subrogation. When Brown and the State Fund were negotiating a settlement agreement, they were mutually mistaken regarding the law. Neither party understood that

11

the State Fund's right to subrogation was limited as described by our decision in *Zacher*.

In *McFarland v. Stillwater County* (1940), 109 Mont. 544, 98 P.2d 321, this Court recognized that a mutual mistake of law entitled a plaintiff to recovery. Also, in *Hicks v. Stillwater County* (1929), 84 Mont. 38, 274 P. 296, we held that a plaintiff was entitled to relief and that rescission of a contract was warranted because there had been a mutual mistake of law with regard to the compensation due a county employee. In this case, we similarly conclude that Brown is entitled to relief because the parties' consent to the settlement contract was based on a mutual mistake of law regarding subrogation rights. Therefore, we conclude that the court erred in holding that there were no grounds which would allow Brown to rescind the contract.

Brown urges this Court, as he did the Workers' Compensation Court, to order the State Fund to refund to him $18,666.67 because that was the amount "withheld" in the settlement agreement as its subrogation interest. Brown is entitled to rescind the settlement agreement on the basis that consent to this agreement was based on a mutual mistake of law. However, he is not entitled to the reimbursement of a subrogation interest that has not been finally determined. If the contract is rescinded, it is rescinded in its entirety, leaving the issues of Brown's entitlement to benefits and the State Fund's subrogation interest, if any, to be determined.

12

Brown also appealed from the court's denial of his request for attorney fees. Whether or not he is entitled to attorney fees under § 39-71-611, MCA (1983), depends on a determination by the Workers' Compensation Court of the benefits to which Brown is entitled following rescission of his settlement agreement. That issue will have to be resolved by further proceedings.

We reverse the judgment of the Workers' Compensation Court in regard to its conclusion that Brown was not entitled to rescind the contract, and remand for further proceedings consistent with this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

13

November 2, 1993

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

JOHN HOUTZ
Attorney at Law
P.O. Box 1230
Forsyth, MT 59327

CHARLES G. ADAMS, Legal Counsel
State Compensation Mutual Insurance Fund
P.O. Box 4759
Helena, MT 59604-4759

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
    Deputy