CULPEPPER, Judge.
We granted alternative writs in this case ordering the district judge to grant a request by defendant that plaintiff submit to a physical examination; or else that either the respondent judge or plaintiff-respondent show cause why the request for a physical examination should not be granted. Pursuant to these alternative writs, the plaintiff-respondent has filed briefs in this court and the matter has been heard on oral argument and briefs by plaintiff and defendant.
After careful consideration, we have decided that the written reasons for judgment by the trial judge correctly state the facts and the law. We adopt as our own the following portion of the trial judge’s opinion:
“This matter comes on rule filed by the defendant to require the plaintiff to submit to a medical examination by Dr. Daniel M. Kingsley an orthopedic surgeon of Alexandria, Louisiana. (The naming of the doctor to make the examination is irrelevant).
“The plaintiff was injured in an accident in which a vehicle owned by the defendant Continental Southern Lines, Inc. was involved. At the time of the accident the plaintiff complained of hurting and Mr. Peach, the Claims Manager for Continental Southern Lines, Inc. instructed the plaintiff to report to the Physicians and Surgeons Clinic. Mr. Peach stated that he instructed the plaintiff to report there for first-aid and examination and that the defendant would pay for the doctor. The plaintiff testified that Mr. Peach told him to go to Dr. Hardy and that the bus company would pay the doctor bill.
“The plaintiff went to Dr. Hardy at the P & S Clinic and was treated by Dr. Hardy for a year. Dr. Hardy never rendered a bill to the plaintiff. The medical reports of Dr. Hardy and the bill of Dr. Hardy were rendered to the defendant. Dr. Hardy referred the plaintiff to Dr. Fred C. Boy-kin, a neurosurgeon practicing in Shreveport, Louisiana.
“Dr. Boykin performed a mylogram and reported that it was positive for a ruptured cervical disc at the CS-C6 interspace bilaterally. This finding of Dr. Boykin was made in December of 1967. At the mylo-gram a radiologist was present.
“Other than the three doctors mentioned above the plaintiff was seen by a doctor in Atlanta because he was experiencing some headaches. No report of this doctor has been received.
“From the pre-trial conference which I have already held in this case and from the questions during the hearing of this matter and the arguments of counsel, it is an evident fact that both Dr. Hardy and Dr. Boy-kin rendered reports of their examinations to the defendant.
“The defendant contends that Dr. Hardy was their doctor for the initial examination but not subsequent thereto. They also contend that Dr. Boykin is not their doctor. *367 They admit that Dr. Boykin is not the plaintiff’s doctor. Counsel for the defendant stated that Dr. Boykin was not anyone’s doctor.
“It can be fairly stated from all of the evidence in the case that Dr. Hardy examined the plaintiff for the benefit of the defendant and if we are to place Dr. Boykin on either side he would have to be placed on the side of the defendant. However, it is not necessary to place Dr. Boykin on either side as he can remain neutral insofar as the law is concerned.
“Code of Civil Procedure Article 1493 provides :
“ ‘Art. 1493. Physical and mental examination of parties
In an action in which the mental or physical condition of a party is in controversy, the court in which the action is pending or in which the judgment was originally rendered may order him to submit to a physical or mental examination by a physician, except as otherwise provided by law. The order may be made only on motion for good cause shown and upon notice to the party to be examined and to all other parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.’ ”
“It is noticed that this article leaves great discretion in the trial judge in ordering an examination to take place. However some limitations are placed on this discretion by the article as well as by the cases decided thereunder. The article states that the order can issue only upon a motion for a good cause. It would not appear that the defendant has shown good cause because they have the benefit of the medical report of Dr. Hardy, a physician of their own choosing, and they have the benefit of medical report of Dr. Boykin and the radiologist that assisted Dr. Boykin, doctors that can be classified as neutral or the defendant’s doctors. The defendants are fully aware of the plaintiff’s physical condition.
“This is all that a defendant is entitled to have — knowledge. The defendant is not entitled to have examinations made in order to search for a more favorable report to confuse the medical aspect of a case. They are entitled to know clearly but not to muddy.
“It should be observed that the examination sought to be made by the defendant is an orthopedic examination. The defendant complained that the case took a decided turn when the neuro-surgeon reported that the plaintiff had sustained a ruptured cervical disc. I do not consider this to be a change of the medical situation but a resolution of a previous fluid situation. Even if it be a change the defendant should not be seeking an examination by an orthopedic surgeon but should be seeking an examination by a neuro-surgeon. Apparently their choice of an orthopedic surgeon over a neuro-surgeon is the fear that Dr. Boykin would be classified as their doctor.
“The Court feels that its decision in this matter is the only course of action that can be taken under the jurisprudence.
“A case in point is Woods v. Grain Dealers Mutual Insurance Company, [La.App.] 159 So.2d 410 (2nd Cir.1964). The Court held that the defendant was not entitled to an orthopedic examination by a second orthopedic surgeon where the defendant had the plaintiff examined by one orthopedic surgeon.
“This right of the defendant was well discussed in Lindsey v. Escude, [La.App.] 179 So.2d 505 (3rd Cir.1965). In the reporter immediately following the Escude decision is Abshire v. Hartford Accident and Indemnity Company, [La.App.] 179 So.2d 508, (3rd Cir.1965). In the latter case the court distinguished the law as it applied to workmen’s compensation from that of tort cases.
“In the Escude case the trial judge had signed an ex parte order for the plaintiff to submit to an examination by the defendant’s doctor. The Court of Appeal held that this was without authority. It held *368 that while the court may order an examination it could not be by ex parte order but only after notice to the party. On this phase of the dispute the court stated:
“ ‘The reasons for this are clear. An order for a medical examination is not granted as of right; there must be a showing of good cause, and the party to be examined should be able to have the examination made at a time and place without undue inconvenience to himself, as well as to oppose examinations as unnecessary, painful, or hazardous. 2A Barron & Holtzoff, cited above, Section 822’.
“Later in the decision the court went into the history of medical examinations at the request of the adverse party. Since it is of interest here it ought to be quoted in full.
“ ‘Moreover, a compulsory examination of an individual involves a sensitive question touching closely upon the constitutionally protected sanctity of the person.
“ ‘Prior to the federal rules, for considerations expressly based upon this age-old concept of the law of free men, it was settled doctrine that in federal proceedings an individual’s person could not be examined against his will. See Union Pacific Ry. Co. v. Botsford, 141 U.S. 250, 11 S.Ct. 1000, 35 L.Ed. 734 (1891), as well as succeeding jurisprudence; cf. also Louisiana cases such as Kennedy v. New Orleans Ry. & Light Co., 142 La. 879, 77 So. 777. Even the source federal rule, 35(a), was barely held valid by the United States Supreme Court in Sibbach v. Wilson & Co., 312 U.S. 1, 655, 61 S.Ct. 422, 85 L.Ed. 479 (1941), with the dissenting four Justices pointing out the ancient roots in our law of “the inviolability of a person:” of “the liberties of the subject”, of the old English Law, 61 S.Ct. 428. In its most recent expression on the subject, the United States Supreme Court has pointed out that this discovery device is the most limited of all, that the requirement of good cause is serious and is not met by pro forma allegations, and that a court should exercise discriminating application before ordering such a medical examination. Schlagenhauf v. Holder, 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964).’ ”
“For the above and foregoing reasons the rule nisi is dismissed.”
 A motion for a physical examination under LSA-C.C.P. Article 1493 is addressed to the sound discretion of the trial judge. As is shown by his written opinion quoted above, the trial judge in this case has given very logical reasons for his decision. We think he has correctly applied the statutory law and jurisprudence. Certainly it cannot be said that he abused his discretion.
Out of an abundance of precaution we wish to make it clear that our decision herein does not restrict the trial judge in his consideration of any further requests for physical examinations which may be made in this case. Of course, each request must be determined according to its own facts and circumstances.
For the reasons assigned, the writs issued in this case are recalled and set aside and this matter is remanded to the district court for further proceedings in accordance with law.
All costs incident to these writs are assessed against the defendant relator.
HOOD, J., dissents and assigns written reasons.
SAVOY, J., dissents for the reasons assigned by HOOD, J.