IN THE SUPREME COURT OF THE STATE OF MONTANA

No. 01-741

2001 MT 269

**OPINION AND ORDER**

GARY WINSLOW,

Petitioner,

v.

MONTANA RAIL LINK, INC., a

Montana corporation,

Respondent.

¶1 Gary Winslow has petitioned this Court for a writ of supervisory control. He seeks to have this Court reverse a District Court ruling requiring that he submit to a psychiatric evaluation pursuant to Rule 35, M.R.Civ.P. He contends that the District Court erred in finding that the "good cause" requirement of Rule 35 was satisfied by the fact that Winslow has asserted an independent claim for intentional or negligent infliction of emotional distress. He further contends that the District Court erred in ordering a Rule 35 examination without setting forth the "manner, conditions and scope of the examination" in advance of the examination itself.

¶2 This petition raises issues as to the proper scope of discovery of medical information through psychiatric examination. Discovery of potentially-privileged material presents unique issues which we have, under certain circumstances, found sufficient to invoke original jurisdiction.

¶3 In *Jaap v. District Court* (1981), 191 Mont. 319, 623 P.2d 1389, we granted a writ because the District Court had exceeded its authority by allowing defendant's attorney to privately interview plaintiff's physicians-a method of discovery not authorized by the

Montana Rules of Civil Procedure.

¶4 In *Burlington Northern v. District Court* (1989), 239 Mont. 207, 779 P.2d 885, we again addressed a District Court order compelling discovery of potentially-privileged material. The District Court had ordered the defendant to produce certain work product and had enjoined the defendant from engaging in further discovery until it complied with the discovery order. The defendant argued that if it were to disclose privileged material, "the harm is complete and cannot be rectified on appeal." *Burlington Northern*, 239 Mont. at 211, 779 P.2d at 888. We agreed that the potential harm could not be remedied 1by appeal. We exercised supervisory control and ultimately vacated that part of the District Court order enjoining the defendant from engaging in further discovery.

¶5 In *State ex rel. Mapes v. District Court* (1991), 250 Mont. 524, 822 P.2d 91, we accepted jurisdiction over a petition for supervisory control in a Rule 35 discovery dispute. Mapes contended that his claim was for physical injuries from exposure to toxic fumes. As a result of the injury to his central nervous system, he claimed that he had measurable cognitive deficit. He maintained, however, that he was not seeking damages for any psychological injury and thus argued that there was no good cause for discovery of his psychological records. While recognizing that interlocutory review of discovery orders is not favored, *State ex rel. Guar. Ins. v. District Court* (1981), 194 Mont. 64, 634 P.2d 648, we noted: "Defendant's right to discover plaintiff's mental or physical condition is based on fairness where that mental or physical condition is placed in issue by a claim for damages. However, defendant's need for that discovery must be balanced by plaintiff's constitutional right to privacy found in Mont. Const. Art. II, Sec. 10." *Mapes*, 250 Mont. at 529, 822 P.2d at 94. We held that confidentiality of communications between a patient and his psychologist can be waived like any other privilege. "When a party claims damages for physical or mental injury, he or she places the extent of that physical or mental injury at issue and waives his or her statutory right to confidentiality to the extent that it is necessary for a defendant to discover whether plaintiff's current medical or physical condition is the result of some other cause." *Mapes,* 250 Mont. at 530, 822 P.2d at 94.

¶6 Similar to *Mapes*, the present case presents issues as to good cause for and scope of discovery of potentially-privileged medical information under Rule 35(a), M.R.Civ.P. The question of whether the court must define the conditions, manner and scope of a Rule 35 examination before the examination is conducted is one of first impression and is of statewide importance. If, as alleged, the District Court is proceeding under a mistake of law as to the scope of such discovery, the harm cannot be remedied by way of appeal.

Accordingly, we accept jurisdiction over this matter.

## Discussion

¶7 Winslow concedes that, in pleading an independent claim for negligent or intentional infliction of emotional distress, he has placed his mental condition in controversy. However, he contends that he has not sought psychological care nor does he plan to retain an expert witness to testify on the subject. He posits that it is, therefore, not necessary for Montana Rail Link (MRL) to present expert testimony to meet Winslow's proof. He argues further that, given his suspicions that the examination might be improperly used to assess his credibility, the court erred in concluding that the mere filing of a claim for infliction of emotional distress is sufficient to satisfy the good cause requirement of Rule 35, M.R.Civ.P.

¶8 Rule 35, M.R.Civ.P., provides:

**Rule 35. Physical and mental examination of persons.**

**Rule 35(a). Order for examination.** When the mental or physical condition (including the blood group) of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a suitably licensed or certified examiner or to produce for examination the person in the party's custody or legal control. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.

**Rule 35(b). Report of examiner.** (1) If requested by the party against whom an order is made under Rule 35(a) or the person examined, the party causing the examination to be made shall deliver to the requesting party a copy of the detailed written report of the examiner setting out the examiner's findings, including results of all tests made, diagnosis and conclusions, together with like reports of all earlier examinations of the same condition. After delivery the party causing the examination shall be entitled upon request to receive from the party against whom the order is made a like report of any examination, previously or thereafter made, of the same condition, unless, in the case of a report of examination of a person not a

party, the party shows that the party is unable to obtain it. The court on motion may make an order against a party requiring delivery of a report on such terms as are just, and if an examiner fails or refuses to make a report the court may exclude the examiner's testimony if offered at the trial.

(2) Waiver of privilege. Either by (1) requesting and obtaining a report of the examination ordered as provided herein, or by taking the deposition of the examiner, or by (2) commencing an action or asserting a defense which places in issue the mental or physical condition of a party to the action, the party examined or a party to the action waives any privilege the party may have in that action or any other action involving the same controversy, regarding the testimony of every person who has treated, prescribed, consulted, or examined or may thereafter treat, consult, prescribe or examine, such party in respect to the same mental or physical condition; but such waiver shall not apply to any treatment, consultation, prescription or examination for any mental or physical condition not related to the pending action. Upon motion seasonably made, and upon notice and for good cause shown, the court in which the action is pending, may make an order prohibiting the introduction in evidence of any such portion of the medical record of any person as may not be relevant to the issues in the pending action.

(3) This subdivision applies to examinations made by agreement of the parties, unless the agreement expressly provides otherwise. This subdivision does not preclude discovery of a report of an examiner or the taking of a deposition of the examiner in accordance with the provisions of any other rule.

¶9 The District Court relied upon the United States Supreme Court decision in *Schlangenhauf v. Holder* (1964), 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152, in concluding that the pleadings themselves can establish good cause for ordering a mental examination. *Schlangenhauf* is the seminal decision concerning Rule 35 examinations. Rule 35(a), Fed.R.Civ.P., is the same as Rule 35(a), M.R.Civ.P. We adopted the *Schlangenhauf* standard for Rule 35, M.R.Civ.P., examinations in *Marriage of Binsfield* (1995), 269 Mont. 336, 888 P.2d 889. In *Schlangenhauf*, the Supreme Court stated:

Of course, there are situations where the pleadings alone are sufficient to meet these requirements. A plaintiff in a negligence action who asserts mental or physical injury, c.f. *Sibbach v. Wilson & Co., supra*, places that mental or physical injury clearly in controversy and provides the defendant with good cause for an

examination to determine the existence and extent of such asserted injury.

*Schlangenhauf, 379 U.S. at 119.*

¶10 Winslow relies on *Neal v. Siegel-Robert, Inc.* (E.D. Mo. 1996), 171 F.R.D. 264, for the proposition that the mere fact that a plaintiff has requested emotional distress damages does not necessarily mean that a party has placed his mental capacity in controversy. As the District Court observed, however, the plaintiff in *Neal* had referred to emotional distress only as a component of general damages. In contrast, Winslow, in count three of his amended complaint, has made a specific claim for negligent or intentional infliction of emotional distress.

¶11 Winslow also relies on our decision in *Binsfield*. *Binsfield*, however, is distinguishable. *Binsfield* was a dissolution proceeding in which the husband contended that the wife was not mentally capable, and thus he requested an independent medical examination. The Court determined that the husband had failed to demonstrate the wife's mental condition was "in controversy" and thus a Rule 35, M.R.Civ.P., examination was not warranted. Unlike the present case, there was no independent "*Sacco*" tort claim involved.

¶12 In *Sacco v. High Country Independent Press, Inc.* (1995), 271 Mont. 209, 896 P.2d 411, we held that an independent cause of action for negligent infliction of emotional distress will arise under circumstances where serious or severe emotional distress to the plaintiff was the reasonably foreseeable consequence of the defendant's negligent act or omissions. Liability only arises when the emotional distress is "extreme." We adopted that same standard for intentional infliction of emotional distress claims and reaffirmed the requirement that the emotional distress suffered must be "serious or severe." *Sacco*, 271 Mont. at 237, 896 P.2d at 428. In deciding *Sacco*, we reasoned that with "today's more advanced state of medical science, technology and testing techniques," there is better capability to determine whether a party truly suffers emotional distress, thus helping avoid a floodgate of emotional distress claims. *Sacco*, 271 Mont. at 233, 896 P.2d at 425.

¶13 Thus, given that Winslow has made an independent "*Sacco*" claim for infliction of emotional distress, and given our specific reliance in *Sacco* on the advanced state of medical testing techniques, we conclude that the pleading of the independent tort claim is sufficient to satisfy the "good cause" requirement in Rule 35, M.R.Civ.P. Accordingly, we affirm the District Court's determination that good cause has been shown for ordering a mental evaluation.

¶14 Winslow also contends that the court erred in not setting forth the manner, condition and scope of the examination prior to the examination. It is at this conjuncture that Winslow's suspicions about the purpose of the examination come into play. Winslow is correct that Rule 35, M.R.Civ.P., does require that the court "shall specify the time, place, manner, conditions and scope of the examination and the person or persons by whom it is to be made." He is also correct that the court's present orders do not comply with this requirement of specificity. In addressing Winslow's concerns about the scope of the intended examination, the District Court held:

> At this point, Dr. Stratford has not conducted the examination and the Court has no way of knowing what his proposed testimony will be. Furthermore, the Court does not know what evidence Winslow will offer in support of his claim for the negligent or intentional infliction of emotional distress. Thus, it is premature for the Court to determine the parameters of Dr. Stratford's testimony.

¶15 The District Court essentially adopted an "after the fact" approach in which it would address the parameters of the testimony once it had been presented. This approach, however, is not consonant with the spirit of the Rule. Recognizing the difficulties of ruling on anticipated testimony, the Rule nonetheless requires that the court, at least in a general sense, define the scope of the examination. For example, in *Mapes*, we limited the scope of discovery of plaintiff's psychological records by allowing defendant to depose the psychologist to determine whether, in his opinion, plaintiff suffered from any cognitive deficit caused by any factor, other than the conditions of his employment, as alleged in his complaint. Further, as to any claims of psychological damage, the defendant could also inquire as to whether plaintiff suffered from any emotional or psychological problems resulting from any factor other than the causes alleged in his complaint.

¶16 In the present case, MRL posits that Dr. Stratford should be allowed to determine the existence and extent of the alleged emotional distress injuries. We note that MRL's proposed scope of the examination is consistent with the United States Supreme Court's holding in *Schlangenhauf* wherein the Court approved Rule 35 examinations "to determine the existence and extent of such asserted injury." *Schlangenhauf*, 379 U.S. at 119. As in *Mapes*, Winslow can also be examined to determine whether he suffers from any emotional or mental problems which are the result of factors other than the causes alleged in his complaint. In addressing Winslow's asserted emotional distress injuries, Dr. Stratford will presumably arrive at an opinion as to the existence and extent of the injuries.

Although an examining physician may not invade the province of the jury by testifying that a claimant is or is not truthful, to the extent that the physician's findings confirm or conflict with the claimant's assertions, his or her testimony may assist the jury in weighing the claimant's credibility. *Benjamin v. Torgerson,* 1999 MT 216, 295 Mont. 528, 985 P.2d 734.

¶17 This matter is remanded to the District Court for entry of an order, consistent with the above discussion of Rule 35, M.R.Civ.P., specifying the "time, place, manner, conditions and scope" of the examination.

¶18 MRL's request for a stay of District Court proceedings pending resolution of the petition for writ of supervisory control is denied as moot.

DATED this 18th day of December, 2001.

/S/ KARLA M. GRAY

/S/ W. WILLIAM LEAPHART

/S/ JAMES C. NELSON

/S/ JIM RICE

Justice Jim Regnier did not participate in the above matter.

Justice Terry N. Trieweiler dissenting.

¶19 I concur with the majority's conclusion that this is an appropriate case for the exercise of supervisory control. I also concur with the Court's conclusion that the District Court's order lacked the specificity regarding the parameters for a psychiatric exam that is required by Rule 35, M.R.Civ.P.

¶20 I dissent from the majority's conclusion that Rule 35, as interpreted by the United States Supreme Court, in *Schlagenhauf v. Holder* (1964), 379 U.S. 104, authorizes a mental examination in this case.

¶21 I agree with the interpretation and application of *Schlagenhauf* by the Supreme Court

of Texas in *Coates v. Whittington* (Tex. 1988), 758 S.W.2d 749. In *Coates,* the plaintiff claimed damages for mental anguish she experienced as a result of physical injuries she alleged were caused by the defendant's product. The trial court ordered that she undergo a mental examination pursuant to a Texas rule of civil procedure derived from the same federal Rule 35 which was interpreted by the United States Supreme Court in *Schlagenhauf.* However, the Texas Supreme Court concluded after considering *Schlagenhauf* that the trial court abused its discretion by ordering Coates to submit to a mental examination. The Texas court gave the following explanation for its decision:

> Drackett maintains that Coates' mental condition is in controversy because she has pleaded for mental anguish damages. In support of its position, Drackett relies on *Schlagenhauf*, 379 U.S. at 119, 85 S.Ct. at 243, where the United States Supreme Court stated:
>
> A plaintiff in a negligence action who asserts mental or physical injury . . . places that mental or physical injury in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury.
>
> In *Schlagenhauf,* however, the court also warned that sweeping examinations of a party who has not affirmatively put his mental condition in issue may not be routinely ordered simply because the party brings a personal injury action and general negligence is alleged. *Id.* at 121, 85 S.Ct. at 244. Further, federal courts that have applied Rule 35 in light of *Schlagenhauf* have consistently distinguished "mental injury" that warrants a psychiatric evaluation from emotional distress that accompanies personal injury. *Compare Anson v. Fickel*, 110 F.R.D. 184, 186 (N.D. Ind. 1986) (mental condition is in controversy when plaintiff claims mental problems that required confinement in a psychiatric hospital) *and Love v. Philadelphia Newspapers, Inc.*, 101 F.R.D. 296, 298-99 (E.D.Pa. 1983) (mental condition is in controversy when plaintiff claims severe emotional distress and seeks to prove damages through testimony of psychiatrist) *with Cody v. Marriott Corp.*, 103 F.R.D. 421, 423 (D.Mass. 1984) (mental condition is not in controversy when plaintiff claims emotional distress and does not claim a psychiatric disorder requiring psychiatric or psychological counseling).
>
> In her suit against Drackett, Mrs. Coates asserts that she has suffered the type of emotional distress that typically accompanies a severe second degree burn and

permanent scarring. In her deposition, she described her mental anguish as feelings of embarrassment and self-consciousness because the scar is ugly and noticeable in public. She is not alleging a permanent mental injury nor any deep seated emotional disturbance or psychiatric problem. Mrs. Coates' mental anguish claim is, therefore, for the emotional pain, torment, and suffering that a plaintiff who has been burned and scarred would experience in all reasonable probability. *Compare Moore v. Lillebo*, 722 S.W.2d 683, 688 (Tex. 1986). Further, the record reflects that Mrs. Coates has not sought any type of psychiatric treatment as a result of the incident and, equally important, does not propose to offer psychiatric or psychological testimony to prove her mental anguish at trial.

To permit Drackett to compel a mental examination because Mrs. Coates has claimed mental anguish damages would open the door to involuntary mental examinations in virtually every personal injury suit. Rule 167a was not intended to authorize sweeping probes into a plaintiff's psychological past simply because the plaintiff has been injured and seeks damages for mental anguish as a result of the injury. Plaintiffs should not be subjected to public revelations of the most personal aspects of their private lives just because they seek compensation for mental anguish associated with an injury.

*Coates, 758 S.W.2d at 751-52.*

¶22 In *Schlagenhauf*, the Supreme Court concluded that where a person alleges "mental injury," that person's mental condition is in controversy and Rule 35 is applicable. *Schlagenhauf*, 379 U.S. at 119. However, there is no mental injury alleged in this case. "Injury" infers a diagnosis which requires expert opinion and treatment. Plaintiff intends to call no expert witness for purposes of providing a diagnosis and has received no treatment for his mental distress. As in *Coates*, Winslow alleges mental distress that typically accompanies loss of a job and the inability to find comparable employment. When asked to explain his emotional distress claim, he testified that he is irritable and upset because of lost income, loss of insurance coverage, the inability to make house payments and his inability to find other employment. It doesn't take an expert to evaluate his claim for damages based on these experiences. The reasonableness of his claim is well within the comprehension of the average juror.

¶23 The common sense approach taken by the Texas Supreme Court is especially preferable to the majority's opinion in light of the strict constitutional right to privacy

found in the Montana Constitution at Article II, Section 10, and our observation in *State ex rel. Mapes v. District Court* (1991), 250 Mont. 524, 532, 822 P.2d 91, 96, that the "psychiatric examination is particularly invasive of an individual's right to privacy. It is an extraordinary form of discovery which is permitted under Rule 35 only when the plaintiff's mental condition is in controversy, and *then only when good cause has been shown.*" (Emphasis added.)

¶24 I would conclude that where damages for mental distress are claimed without an allegation of "mental injury," good cause has not been established for the invasive process of a psychiatric examination.

¶25 The majority infers there is a difference between ordinary claims of mental distress and direct actions for damages based on mental distress when "serious" mental distress must be proven. However, that distinction is irrelevant pursuant to *Schlagenhauf* and its progeny as pointed out by the Texas Supreme Court. The issue is whether mental injury has been alleged, not whether the mental distress claimed is minor or serious.

¶26 The reasoning in the majority opinion opens a Pandora's Box for the invasion of individual privacy in the average personal injury case. For example, where mental distress is alleged as a result of physical injury and because of the severity of the physical injury the mental distress will also necessarily be severe, does the majority opinion mean that psychiatric examinations of the plaintiff are now authorized even though no independent claim for intentional or negligent infliction of emotional distress has been alleged? I don't think that's the majority's intention but it would be hard to argue with that application of its decision. If that is in fact how its decision is to be applied, the potential for harassment of injured victims who seek compensation for injuries caused by the negligence of others is only limited by the defendant's litigation budget.

¶27 The majority opinion is a bad result not warranted by any reasonable interpretation of the "good cause" requirement found at Rule 35, M.R.Civ.P. For these reasons, I dissent from the majority's conclusion that based on the facts in this case the District Court did not abuse its discretion when it authorized a mental examination of the petitioner, Gary Winslow.

/S/ TERRY N. TRIEWEILER

Justice Patricia O. Cotter joins in the foregoing dissent.

/S/ PATRICIA COTTER