No. 02-477

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 89

RANDALL SIMMS and CAROL SIMMS,

       Petitioners,

   v.

MONTANA EIGHTEENTH JUDICIAL DISTRICT COURT,
GALLATIN COUNTY, HONORABLE MIKE SALVAGNI, presiding,

       Respondent.

ORIGINAL PROCEEDING:      Writ of Supervisory Control
                                         In and for the County of Gallatin, Cause No. DV-01-46
                                         The Honorable Mike Salvagni, Judge presiding.

COUNSEL OF RECORD:

       For Petitioners:

              Geoffrey C. Angel, Angel Law firm, Bozeman, Montana

       For Respondent Montana Eighteenth Judicial District Court:

              Hon. Mike Salvagni, District Judge, Bozeman, Montana

       For Respondent Dr. Charles Fritz:

              John J. Russell, Lisa A. Speare, Brown Law Firm, Billings, Montana

       For Respondent Bozeman Deaconess Health Services:

              Julie A. Lichte, Swandal, Douglass & Gilbert, P.C., Livingston, Montana

Submitted:  September 17, 2002
Decided:  April 21, 2003

Filed:

_____
                     Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

¶1     The Plaintiffs, Randall and Carol Simms, filed a complaint in the District Court for the Eighteenth Judicial District in Gallatin County, in which they alleged that Randall was damaged by the professional negligence of the Defendants, Dr. Charles Fritz and Bozeman Deaconess Hospital.  The Defendants filed a motion, pursuant to Rule 35, M.R.Civ.P., to compel Simms to submit to an independent medical examination by Dr. Jose Ochoa in Portland, Oregon.  The District Court granted the motion over the Plaintiffs' objection.  The Simms filed a Petition for a Writ of Supervisory Control with this Court and requested that we conclude that the District Court was proceeding pursuant to a mistake of law.  We granted supervisory control.

¶2     The issues presented are as follows:

¶3     1.    Are the facts and issues presented in this case appropriate for resolution by supervisory control?

¶4     2.    Did the District Court abuse its discretion when it ordered Simms to submit to the independent medical examination?

FACTUAL AND PROCEDURAL BACKGROUND

¶5     On May 3, 1999, Randall Simms sustained a puncture wound to his arm while discarding broken glass at his place of employment.  He went to the Bozeman Deaconess Hospital emergency room where he was evaluated and treated by Dr. Charles Fritz.  Dr. Fritz diagnosed a "right forearm laceration, probable radial artery," closed it with two sutures and a pressure dressing, and discharged Simms from emergency care.

2

¶6     In the early morning hours of May 4, 1999, Simms returned to the emergency room because he was experiencing substantial pain and swelling in his right forearm. He was evaluated and treated by Dr. John Campbell. Dr. Campbell diagnosed compartment syndrome (the collection of blood in the soft tissues of an extremity) caused by bleeding from the lacerated radial artery of Simms' right forearm. He performed an emergency surgical procedure to relieve the pressure caused by the bleeding artery.

¶7     Subsequently, Simms developed what is known as reflex sympathetic distrophy (RSD) or complex regional pain syndrome (CRPS). CRPS is a condition that is clinically associated with pain, swelling, skin discoloration, and immobility. Simms alleges that his condition causes severe pain that prevents him from working, performing everyday tasks, pursuing recreational past-times, and that he suffers from depression as the result of his condition. He has received extensive treatment for pain management, including prescribed pain medication and two spinal stimulator implants.

¶8     The Simms filed a complaint against Dr. Fritz and Bozeman Deaconess Hospital for professional negligence in which they alleged that the Defendants' negligence caused Mr. Simms' current condition. They seek damages for physical injury, emotional distress and loss of consortium.

¶9     The Simms filed an expert witness disclosure, which listed numerous medical experts who were prepared to testify as to Mr. Simms' condition. Those who intended to testify about his condition formed their opinions based on observations made during actual treatment of Simms. Their combined testimony is intended to establish that Simms suffers

3

from all of the clinical signs of CRPS and that the likely cause of the condition was compartment syndrome.

¶10 In response, the Defendants requested that Simms attend an independent medical examination, performed by Dr. Jose Ochoa, in Portland, Oregon. Ochoa is a neurology specialist at the Oregon Nerve Center who is known throughout the medical community for his unorthodox views on CRPS. He rarely acknowledges the presence of CRPS and diagnoses most cases as pseudoneurological disorders caused by unconscious hysterical conversion-somatization or malingering. Ochoa has on occasion acknowledged his reputation as a "hired gun." Consequently, Ochoa has become well known and sought out in the legal community as a doctor for hire to refute CRPS claims.

¶11 Simms refused to cooperate. In response, the Defendants filed a motion to compel him to submit to the examination. Ochoa's affidavit, which explained the intended procedure for the IME, was attached to the Defendants' motion.

¶12 The proposed medical examination would require that Simms travel to Portland, Oregon, for three days. The examination would include a telethermography, a quantitative sensory thermal test, nerve conduction studies, electromyography, somatosensory evoked potentials, a diagnostic local anesthetic block, and an intravenous phentolamine sympathetic block. The examination would also include psychological evaluations and a medical history evaluation by members of Ochoa's "team." No treatment would be provided by Ochoa.

¶13 The nerve conduction studies involve electrical stimulation of sensory and motor nerves through electrodes applied to the surface of the skin. Somatosensory evoked

4

potentials involve a similar procedure, except that electrodes are placed on the spine and scalp as well. Electromyography involves inserting electrodes through the skin and into the muscles to assess the condition of the muscles and motor nerves. The diagnostic local anesthetic block involves injection of anesthetic close to a nerve for collection of data concerning the origin of pain, numbness and weakness. No procedural explanation was offered for the intravenous phentolamine sympathetic block. Ochoa's affidavit states that "the examination I propose does not include harmful procedures designed to cause pain . . . and will not harm Plaintiff's Implanted Pulse Generator ." Ochoa alleges that the tests are necessary to determine the neurological cause of Simms' condition.

¶14    On July 24, 2002, the District Court granted the Defendants' motion to compel. The court rejected Simms' contentions that the medical information was available from other sources, that Ochoa is biased, that the medical exam would be unreasonably burdensome, and that the exam would subject Simms to unreasonable pain, discomfort, and risk. It concluded that Simms has placed his physical and mental condition at issue and that good cause for the medical exam was demonstrated by the Defendants. Simms was ordered to contact Ochoa and schedule the examination at the first available appointment agreeable to Simms.

¶15    On August 7, 2002, the Simms filed a Petition for Writ of Supervisory Control with this Court. They alleged that the District Court was proceeding based on a mistake of law that posed a risk of gross injustice when it compelled Simms to submit to painful, invasive, elective or potentially harmful procedures.

5

## DISCUSSION

## ISSUE 1

¶16 Are the facts and issues presented in this case appropriate for resolution by supervisory control?

¶17 The Simms contend that supervisory control is appropriate in this case because the District Court ordered Mr. Simms to submit to an independent medical examination that will subject him to overly burdensome, painful, invasive, elective and potentially harmful procedures. They maintain that the Rule 35, M.R.Civ.P., does not permit exams of this nature and that an appeal will be an inadequate remedy for the District Court's error.

¶18 This Court will assume supervisory control of a district court to direct the course of litigation where the district court is proceeding based on a mistake of law, which if uncorrected, would cause significant injustice for which an appeal is an inadequate remedy. *Park v. Sixth Judicial Dist. Court*, 1998 MT 164, ¶ 13, 289 Mont. 367, ¶ 13, 961 P.2d 1267, ¶ 13. Whether supervisory control is appropriate is a case-by-case decision that considers the presence of extraordinary circumstances and a particular need to prevent an injustice from occurring. *Park*, ¶ 13.

¶19 In *Winslow v. Montana Rail Link, Inc.*, 2001 MT 269, 307 Mont. 269, 38 P.3d 148, we accepted supervisory control to determine the proper scope of discovery pursuant to a Rule 35, M.R.Civ.P., psychological examination ordered by the district court. We recognized that a defendant's right to physical or psychological examination of the plaintiff, pursuant to Rule 35, M.R.Civ.P., is based on fairness when that condition is placed in issue

7

through a claim for damages. *Winslow*, ¶ 5. However, we noted that the right to examination must be balanced with the plaintiff's constitutional right to privacy. *Winslow*, ¶ 5. We held that if the district court proceeded based on a mistake of law as to the scope of Rule 35, M.R.Civ.P., discovery, the harm could not be remedied by way of appeal. *Winslow*, ¶ 6.

¶20 In this case, Simms has been compelled by the District Court to attend an extensive medical examination by the Defendants' expert 750 miles from home. The examination includes procedures which involve invasive techniques including the penetration of Simms' skin with surgical or diagnostic instruments. The District Court concluded that the medical examination is permitted pursuant to Rule 35, M.R.Civ.P.

¶21 An individual's right to privacy and the right to safety, health, and happiness are constitutionally protected in Montana. Art. II, Sec. 10, Mont. Const.; Art. II, Sec. 3, Mont. Const. The scope of Rule 35, M.R.Civ.P., and the extent to which it permits an individual to be subjected to extensive and allegedly painful, invasive, and potentially harmful procedures is an issue of statewide importance. If it is compelled based on a mistake of law, an appeal will not remedy the harm caused.

¶22 Therefore, we conclude that an appeal is an inadequate remedy and that this is an appropriate circumstance for the exercise of supervisory control to determine whether the District Court is proceeding based on a mistake of law.

## ISSUE 2

¶23 Did the District Court abuse its discretion when it ordered Simms to submit to the proposed independent medical examination?

8

¶24 Simms contends that the District Court's order will subject him to painful, invasive and potentially harmful procedures. Furthermore, he maintains that requiring him to travel to Portland, Oregon, for three days of tests is unduly oppressive and overly burdensome. He maintains that the District Court was incorrect when it concluded that the proposed medical examination is permitted by Rule 35, M.R.Civ.P., and abused its discretion when it ordered him to submit to the medical exam in Portland, Oregon. The Defendants maintain that Simms has put his physical and mental condition at issue in this case and that good cause for the proposed medical exam has been demonstrated. Consequently, they contend that the District Court's conclusion that Rule 35, M.R.Civ.P., required Simms attend the examination was correct.

¶25 Rule 35, M.R.Civ.P., provides in part:

**Rule 35. Physical and mental examination of persons.**

**Rule 35(a). Order for examination.** When the mental or physical condition (including the blood group) of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or metal examination by a suitably licenced or certified examiner or to produce for examination the person in the party's custody or legal control. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.

¶26 Whether the District Court abused its discretion when it ordered Simms to submit to the proposed medical exam implicates the balance between a defendant's need for an independent examination and a plaintiff's fundamental rights.

¶27 In 1891, the United States Supreme Court cited the inalienable right to privacy and

9

to be free from interference from others when it concluded that the common law did not permit a medical examination to be performed without consent. *Union Pacific Railway Co. v. Botsford* (1891), 141 U.S. 250, 12 S.Ct. 1000, 25 L.Ed. 734. The Court stated:

> No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear unquestionable authority of law.

*Botsford*, 141 U.S. at 251, 12 S.Ct. at 1001.

¶28 Subsequently, Rule 35, F.R.Civ.P, was adopted. Rule 35, F.R.Civ.P., permits a court to compel an individual to submit to an independent medical examination when that party puts his or her physical or mental condition at issue. Pursuant to Rule 35, F.R.Civ.P., courts are now permitted to compromise the personal autonomy discussed in *Botsford*. However, the privacy concerns expressed in *Botsford* are recognized in the rule, and it is well accepted that a party does not possess an absolute right to obtain an independent medical examination. Rather, the moving party must demonstrate that the adverse party has placed his or her physical or mental condition at issue and that there is "good cause" for the examination.

¶29 In *Sibbach v. Wilson & Co.* (1941), 312 U.S. 1, 61 S.Ct. 422, 85 L.Ed. 479, a divided Court upheld the constitutionality of Rule 35, F.R.Civ.P. The dissenters noted that Rule 35, F.R.Civ.P., invaded the historic right to individual autonomy discussed in *Botsford* and impermissibly abridged, enlarged and modified the substantive rights of litigants. *See Sibbach*, 312 U.S. at 17-19, 61 S.Ct. at 428-29 (5-4 decision)(Frankfurter, J., dissenting).

¶30 Subsequently, the seminal federal case interpreting Rule 35, F.R.Civ.P., recognized

10

that a compelled medical exam is the most intrusive and, therefore, the most limited discovery tool. *Schlagenhauf v. Holder* (1964), 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152. In *Schlagenhauf*, the Court noted that there are situations in which the pleadings alone can demonstrate good cause to compel a physical or mental examination. *Schlagenhauf*, 379 U.S. at 119, 85 S.Ct. at 243. However, the Court concluded that the "good cause" element of Rule 35, F.R.Civ.P., requires a greater demonstration of need than the traditional relevancy standard in the discovery process. *Schlagenhauf*, 379 U.S. at 118-19, 85 S.Ct. at 242-43. It stated:

> Obviously, what may be good cause for one type of examination may not be so for another. The ability of the movant to obtain the desired information by other means is also relevant.
> Rule 35, therefore, requires discriminating application by the trial judge, who must decide, as an initial matter in every case, whether the party requesting a mental or physical examination or examinations has adequately demonstrated the existence of the Rule's requirements of 'in controversy' and 'good cause'
> . . . .

*Schlagenhauf*, 379 U.S. at 118, 85 S.Ct. at 243.

¶31     In *State ex rel. Mapes v. District Court* (1991), 250 Mont. 524, 822 P.2d 91, we recognized that the defendant's right to discover a plaintiff's mental or physical condition was predicated on fairness in a proceeding where the plaintiff puts that condition at issue. However, we concluded that the right to discover the conditions at issue was not unlimited and did not entitle a defendant to "unnecessarily invade plaintiff's privacy by exploring totally unrelated or irrelevant matters." *Mapes*, 250 Mont. at 530, 822 P.2d at 95. More recently, this Court affirmed that the right to obtain a physical examination, mental

11

examination, or other related information must be balanced with the plaintiff's right to privacy. *Winslow,* ¶ 5.

¶32 "[A] compulsory examination of an individual involves a sensitive question touching closely upon the constitutionally protected sanctity of the person." *Monroe v. Northwestern National Insurance Co.* (La. 1968), 210 So.2d 365, 368. In Montana, the request for an ordered independent medical examination must be weighed against the right to privacy provided for at Article II, Section 10 of the Montana Constitution and the right to safety, health and happiness provided for at Article II, Section 3 of the Montana Constitution. When a proposed examination risks unnecessary, painful or harmful procedures the scale must favor protecting the individual's rights. *See Monroe,* 210 So.2d 365.

¶33 The historical debate concerning ordered examinations and the individual's personal sanctity indicates that the good cause requirement of Rule 35, M.R.Civ.P., examinations is not to be taken lightly. Moreover, good cause for an examination may not constitute good cause for the specific examination requested by a defendant. A court must scrutinize a request for a proposed examination on a case-by-case basis. The time, place, manner, conditions and scope of an examination must be balanced with the plaintiff's inalienable rights. A court is further required to consider the availability of other means through which a defendant can obtain the information necessary to an informed defense. Rule 35, M.R.Civ.P., does not empower a defendant to seek out and employ the most favorable "hired gun" available – no matter the inconvenience to the plaintiff and without regard to the plaintiff's rights.

¶34    The Defendants argue that good cause exists based on the Simms' allegations alone. Indeed, good cause for a physical or mental examination may exist based on the allegations in this case. However, the Defendants have misapprehended the meaning of *Schlagenhauf*. Pleadings do not establish good cause for every requested examination. The proposed examination must be scrutinized and the interests and rights balanced to determine whether the defendants are entitled to the requested examination pursuant to Rule 35, M.R.Civ.P.

¶35    The Defendants maintain that they are entitled to have Ochoa conduct a medical exam to rebut the reports and opinions of the physicians and experts who will testify on behalf of Simms. The Defendants further assert that they will be prejudiced if Simms is not examined by an expert, such as Ochoa, who has researched and published articles on CRPS. The District Court held:

> Plaintiffs' arguments against the use of Dr. Ochoa are not supported. The Court is un-persuaded by the empty assertions regarding Dr. Ochoa's capabilities and harmful practices. Dr. Ochoa's affidavit establishes he is a physician and has enough experience in this area to conduct an IME.

¶36    The Defendants direct this Court to Ochoa's affidavit to support their contention that the procedure will not be painful and that Simms will not be harmed. Ochoa's affidavit indicates that the procedures do not include "harmful procedures designed to cause pain . . . and will not harm Plaintiff's Implanted Pulse Generator."

¶37    The fact that a procedure is not designed to cause pain does not mean that it will not cause pain. Furthermore, nothing in the statement that the procedure will not harm Simms' spinal pulse generator suggests that there is no risk of harm in the procedure. Dr. John

13

Oakley stated under oath that the proposed nerve conduction test is an unorthodox test for CRPS that will be both invasive and painful. Moreover, the other proposed procedures entail inserting electrodes through the skin into the muscles and injecting anesthetics to numb nerve ends. Both procedures are highly invasive and carry an inherent risk of pain and infection.

¶38 Simms contends that requiring him to travel to Portland is overly burdensome due to his condition and the availability of local physicians capable of conducting the examination. Dr. Oakley testified, in fact, that there are numerous physicians in Montana who are capable of providing the appropriate exam. The record indicates that a comprehensive independent exam has already been done at the request of the State Compensation Insurance Fund. The Defendants maintain, that travel to Portland for the exam is not unduly oppressive and overly burdensome in light of the fact that Simms has traveled there in the past to attend a rehabilitation program.

¶39 Simms willingness to travel in search of treatment for his condition has no bearing on whether he should be required to travel to Portland, against his will, for an invasive examination which is not intended to improve his condition. Simms may travel to the corners of the earth for a cure and still justifiably argue that traveling 750 miles for an invasive and unorthodox examination for the benefit of the Defendants is overly burdensome.

¶40 Dr. Oakley, who is personally and professionally familiar with Simms' condition, opined that traveling to Portland would be "uncomfortable" for Simms and is unnecessary. He stated that the proposed testing and facilities available in Portland would not give Ochoa

14

any superior ability to diagnose the cause or nature of Simms' ailment. In fact, he named a number of pain specialists in Montana who were capable of conducting an independent examination and who would provide an accurate independent diagnosis of his condition.

¶41 One need not look further than Ochoa's resume to understand why the defense is so eager have him administer the independent examination in this case. Ochoa is infamous for his opinions about CRPS and has devoted much of his professional career to providing that opinion for hire. While the record indicates that Ochoa has access to facilities unavailable in Montana, nothing suggests that those facilities are necessary for an independent diagnosis, or will produce more reliable results.

¶42 We conclude that, in determining whether there is good cause for a proposed examination pursuant to Rule 35, M.R.Civ.P., a district court should consider both the location and nature of the exam. Requiring a party to travel any further than necessary is an abuse of discretion. Out of state exams should be viewed with disfavor when an adequate examination can be conducted in Montana. Furthermore, it should be kept in mind that the examination is not for the purpose of treatment, and invasive procedures, such as several of those proposed in this case which could be painful or present a risk of infection, should not be permitted over the objection of the examined party. Bringing suit to recover for personal injury may place a claimant's physical or mental condition at issue but it does not waive his inalienable right to the integrity of, and personal autonomy over, his body.

¶43 Rule 35, M.R.Civ.P., does not permit any proposed examination simply because a plaintiff puts his or her physical or mental condition at issue. A court must consider the

15

parameters discussed in this Opinion when it determines whether good cause for a proposed examination has been demonstrated. The District Court failed to consider the limitations of Rule 35, M.R.Civ.P., when it ordered Simms to submit to the medical exam proposed by Ochoa. When the invasive, painful and burdensome nature of the requested examination and its distant location are considered in the context of Simms' fundamental rights, it is clear that the District Court abused its discretion.

¶44     In light of the foregoing conclusions, we reverse the order of the District Court.


/S/ TERRY N. TRIEWEILER



We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART
/S/ JAMES C. NELSON
/S/ JIM REGNIER
/S/ JIM RICE