No. 03-104

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 200

_____

MARLA D. HEGWOOD,                                )
                                                 )
             Petitioner,                         )
                                                 )         O R D E R
      v.                                         )
                                                 )         A N D
MONTANA FOURTH JUDICIAL DISTRICT                 )
COURT, MISSOULA COUNTY, Honorable                )         O P I N I O N
John W. Larson, Presiding,                       )
                                                 )
             Respondent.                         )

_____

¶1     Petitioner Marla Hegwood seeks a writ of supervisory control over the Respondent

Fourth Judicial District Court, Missoula County, the Honorable John W. Larson presiding.

¶2     This case derives from an automobile accident which occurred on September 22,

1998, involving Hegwood and Brian Sutherland.  At the time of the accident, Sutherland was

driving a chip truck for his employer, Missoula Cartage.  On September 12, 2001, Hegwood

filed a negligence action against Sutherland and Missoula Cartage and a declaratory

judgment action against Missoula Cartage's insurer for damages allegedly sustained in the

accident.

¶3     In July 2002, Missoula Cartage and Sutherland moved the District Court for an order

compelling Hegwood to submit to an independent medical examination (IME) conducted by

Dr. Catherine Capps, a licensed orthopedic surgeon.  Hegwood opposed the motion and

1

sought a protective order which permitted (1) a court reporter and video recorder to document the entire examination and (2) Hegwood's counsel to attend the full examination. Hegwood argued that such measures were necessary since Dr. Capps no longer practices medicine and, instead, conducts IMEs "for insurance companies and defense counsel full time." Additionally, through discovery requests, Hegwood sought the following from Dr. Capps: information regarding each IME Dr. Capps performed within the last five years (who retained her services, the subject of each examination, the result of her findings, how much money she received to conduct the IMEs, etc.); all documentation produced in the course of the above IMEs; and tax returns from 1997 to 2001 reflecting Dr. Capps' income from all sources.

¶4      On November 12, 2002, the District Court entered its Opinion and Order on Outstanding Motions. The District Court ordered Hegwood to submit to the IME, conducted by Dr. Capps, pursuant to Rule 35, M.R.Civ.P. Citing *Mohr v. District Court* (1983), 202 Mont. 423, 660 P.2d 88, the District Court denied Hegwood's motions to record the examination and allow her attorney to attend the entire examination. Finally, the District Court deemed the above discovery requests "overbroad and excessively burdensome" and ordered that Dr. Capps need not respond to the requests.

¶5      On February 18, 2003, Hegwood filed the present petition for a writ of supervisory control. Hegwood argues that:

> Supervisory control is appropriate in this case because the District Court made a mistake of law or willfully disregarded the law when it ordered Hegwood to submit to examination without protecting her from the oppression

2

that could occur if Dr. Capps is permitted to examine and question her off the record, and then testify about what she says, unconstrained by a record of the examination.

Supervisory control is also appropriate because the District Court placed Hegwood at a significant disadvantage when it deprived her of the protection of counsel. . . .

Dr. Capps' opinions will have a significant impact on the course of discovery, the prospects of settlement and the outcome of this case, and in the absence of an accurate record and the discovery Hegwood needs to cross-examine and impeach her, the jury's verdict may be meaningless. [Citation omitted.]

¶6 Typically, orders pertaining to discovery are interlocutory in nature and are generally not reviewable in an original proceeding. However, we will exercise our original jurisdiction when an order will place a party at a significant disadvantage in litigating the merits of the case. *Burlington Northern v. District Court* (1989), 239 Mont. 207, 212, 779 P.2d 885, 889. Supervisory control should issue when a district court proceeds under a mistake of law causing a gross injustice for which an appeal is not an adequate remedy. *Safeco v. Montana Eighth Judicial Dist.*, 2000 MT 153, ¶ 14, 300 Mont. 123, ¶ 14, 2 P.3d 834, ¶ 14. Supervisory control is an extraordinary remedy exercised only in extraordinary circumstances. *Safeco*, ¶ 14. For the reasons discussed below, we decline to exercise supervisory control in this matter.

¶7 Rule 35(a), M.R.Civ.P., provides:

**Order for examination.** When the mental or physical condition (including the blood group) of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a suitably licensed or certified examiner or to produce for examination the

3

person in the party's custody or legal control. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.

In contemplating Rule 35, M.R.Civ.P., motions, a court must balance the right to obtain a physical or mental examination with the plaintiff's right to privacy. *Winslow v. Montana Rail Link, Inc.*, 2001 MT 269, ¶ 5, 307 Mont. 269, ¶ 5, 38 P.3d 148, ¶ 5.

¶8 In *Mohr*, Mohr sought an order from the district court which permitted his attorney to attend a medical examination or, in the alternative, permitted him to videotape the examination. The trial court denied Mohr's requests and we accepted supervisory control. Ultimately, we held that "the party's attorney has a right to be present while the examining physician is taking the client's history, but that the attorney cannot be present during the physical examination." *Mohr*, 202 Mont. at 424, 660 P.2d at 88. In so holding, we attempted to "strike a balance between the rights of a litigant to counsel, and the need for efficiency in the court-ordered examination process, giving due consideration to the needs of the medical examiner." *Mohr*, 202 Mont. at 426, 660 P.2d at 89. However, critical to our determination, was the presumption that Rule 35, M.R.Civ.P., examinations constituted "nonadversarial proceedings."

¶9 Most certainly, the IME procedures of years past have experienced marked permutation. The mounting prevalence of the proverbial "hired gun" has increasingly strained the "nonadversarial" nature of court-ordered examinations. *See, e.g., Behler v. Hanlon* (D.Md. 2001), 199 F.R.D. 553, 554 ("Such examinations, euphemistically referred

to by counsel as 'independent medical examinations' . . . can be anything but independent, if they are performed by a doctor who has significant financial ties with insurance companies and attorneys assigned to defend personal injury cases."); *Tirado v. Erosa* (S.D.N.Y. 1994), 158 F.R.D. 294, 298 ("Certainly, in an era in which classified advertisements offering expert testimony appear commonly in publications addressed to lawyers, the adversarial context in which these examinations occur is a reality that must be taken into account in determining what procedures best accommodate the conflicting interests of the parties in a particular case.").

¶10 In *Simms v. Montana Eighteenth Judicial Dist. Court*, 2003 MT 89, ¶ 33, 315 Mont. 135, ¶ 33, 68 P.3d 678, ¶ 33, we indicated that "Rule 35, M.R.Civ.P., does not empower a defendant to seek out and employ the most favorable 'hired gun' available no matter the inconvenience to the plaintiff and without regard to the plaintiff's rights." Hegwood insists that Dr. Capps embodies the "examiner for hire" lamented in *Simms*. As such, Hegwood argues that the District Court should have ordered the requested safeguards to protect her rights throughout the adversarial examination.

¶11 Amicus MTLA submits that "the rule in *Mohr*, when blindly applied, has potentially harsh and oppressive consequences, particularly when defendants choose a professional expert as their Rule 35 examiner." Therefore, MTLA urges us to "more clearly articulate the exceptions alluded to in *Mohr* and the options allowed to district courts, so as to ensure that the interests cited by the Court in *Mohr* are in fact protected and a proper balance between the parties' rights maintained within the intrusive and limited context of Rule 35,

5

M.R.Civ.P."

¶12     *Mohr* does not categorically preclude representation at, and documentation of, the physical examination.  In fact, it provides that "[t]he actual physical examination, *at least in most cases*, does not require the presence of counsel to safeguard its objectivity because, by nature it is a nonadversarial procedure."  *Mohr*, 202 Mont. at 426, 660 P.2d at 89 (emphasis added).  Implicit in *Mohr* is the notion that the examinations may, in some instances, border on advocacy.  When an examinee sufficiently demonstrates subjective predilections or the likelihood of prejudice, i.e., the exam shifts from independent in nature to adversarial, courts must have protective mechanisms at their disposal to negate the inequities.

¶13     For such protective measures, litigants and courts should rely on Rules 26(c) and 35(a), M.R.Civ.P., for direction.  Rule 26(c), M.R.Civ.P., provides, in relevant part, that a court "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: . . . (2) that the discovery may be had only on specified terms and conditions . . . ."  Rule 35(a), M.R.Civ.P., requires a court to "specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made."  We decline to articulate a bright line standard for measuring prospective Rule 35, M.R.Civ.P., debates.  Instead, we leave the matter to the discretion of the trial courts to determine, based on the facts presented and authority derived from *Mohr* and Rules 26(c) and 35(a), M.R.Civ.P., whether to impose checks and balances (representation, recording devices, or the like) upon the IME process.  *See Wood v. Chicago Milwaukee, St. Paul &*

6

*Pacific R. Co.* (Minn. Ct. App. 1984), 353 N.W.2d 195, 197 ("We think *exercise* of the sound discretion of the trial court provides the most appropriate safeguard against [Rule 35] abuses. . . . We leave the decision to allow an attorney's presence during adverse examination to the sound discretion of the trial court.").

¶14    Here, the record does not support the desired intrusion into the examination room. This case does not present the inconvenience contemplated in *Simms*, nor the subjectivity referenced herein, to warrant remedial measures. Merely demonstrating that an examiner performs exams for the insurance industry does not inherently establish the degree of prejudice or potential for abuse as presented in *Simms*. Therefore, without more, we conclude that the District Court did not abuse its discretion when it prohibited Hegwood's counsel from attending, and recording devices from documenting, the entire independent medical examination.

¶15    Finally, Hegwood served the Defendants with several interrogatories and requests for production. Among the requests were: (1) Interrogatory No. 42 which sought information from every IME Dr. Capps performed within the last five years; (2) Request for Production No. 38 which sought "all documentation of Dr. Capps' findings, conclusions, opinions and testimony in the cases and claims" identified in Interrogatory No. 42; and (3) Request for Production No. 39 which sought Dr. Capps' tax returns from 1997 to 2001, reflecting her income from all sources. The District Court ordered that the Defendants "need not respond to these requests" as the requests "are overbroad and excessively burdensome."

¶16    A district court has inherent discretionary power to control discovery under its

7

authority to control trial administration. *Bartlett v. Allstate Ins. Co.* (1996), 280 Mont. 63, 72, 929 P.2d 227, 232. A district court's objective in controlling and regulating discovery is to ensure a fair trial for all concerned, neither according one party an unfair advantage nor placing the other at a disadvantage. *Bartlett*, 280 Mont. at 72, 929 P.2d at 232. The district court is in a better position than this Court to supervise the day-to-day operations of discovery. *Bartlett*, 280 Mont. at 72, 929 P.2d at 232. We will not overturn a district court's order affecting discovery unless it amounts to an abuse of discretion. *State v. Burns* (1992), 253 Mont. 37, 42, 830 P.2d 1318, 1322.

¶17 We agree with the District Court that Hegwood's above discovery requests are overbroad. A plaintiff in like actions might well be allowed to discover information such as: the number of cases the examiner has handled for insurance carriers; which insurance carriers were involved in past examinations; the general subject matter of such examinations; whether the examiner testified on the matter and, if so, the venue in which the examiner testified and the subject matter of the testimony; and the income derived from the examinations. However, the examiner should not have to produce such things as prior tax returns and detailed examination reports, absent the requisite relevancy considerations articulated in Rule 26(b), M.R.Civ.P. Hegwood simply has not demonstrated that the District Court abused its discretion when it rejected the above requests.

¶18 For the foregoing reasons, Hegwood's petition for a writ of supervisory control is DENIED.

DATED this 12th day of August 2003.

8

/S/ KARLA M. GRAY

/S/ JIM REGNIER

/S/ JOHN WARNER

/S/ W. WILLIAM LEAPHART

/S/ JIM RICE