In the Matter of Elaine B. FISCHEL,
Contemner-Appellant.

UNITED STATES of America, Plaintiff,

v.

Harry MARGOLIS et al., Defendants.

No. 77–2278.

United States Court of Appeals,
Ninth Circuit.

July 13, 1977.

Sandra Terzian-Feliz, San Francisco, Cal., argued, for defendants.

Martin A. Schainbaum, Gary K. Shelton, argued, Asst. U. S. Attys., San Francisco, Cal., for plaintiff.

Before KOELSCH, TRASK and SNEED, Circuit Judges.

SNEED, Circuit Judge:

Appellant Elaine B. Fischel was a witness in the criminal trial of Harry Margolis, Ronald H. Adolphson, Quentin L. Breen and Banco Popular Antilliano, N.V. During the course of her testimony the district court ordered her to produce certain documents known as "system accountings." After consultation with counsel, appellant refused to furnish the majority[1] of these system accountings on the grounds that they were protected by the attorney-client and the work product privileges. She also asserted the Fifth Amendment on behalf of her clients with respect to these documents. The district court adjudged her guilty of contempt for this refusal under 28 U.S.C. § 1826(a), and appellant appeals therefrom. We affirm.

[1.] Appellant produced the system accountings pertaining to transactions involving two of her former clients, both of whom are now de-

### I.

*Factual Background.*

Appellant is an attorney who was associated in differing capacities with defendant Harry Margolis, also an attorney, from 1964 to 1971. During this association, she performed tax planning services for her clients with the help of Margolis. These services included designing business transactions for her clients which it was hoped would reduce their taxes.

These business transactions were conducted with a group of business entities which Margolis used to effectuate his tax planning ideas. As a group these entities came to be designated as the "system." Appellant kept track of each of her client's dealings with each entity in the system. She recorded these transactions on a ledger to arrive at a composite picture of each client's business transactions with the system as a whole. These composite pictures are the system accountings which are the center of the controversy now before us.

To understand our decision, a brief description of a system accounting is required. It is a summary prepared by counsel of the business transactions with third party entities undertaken by a client to effectuate the tax planning program devised by Margolis and used by appellant. The information contained in this summary is derived from the entities themselves, records maintained by counsel, and documents of the client. It also includes the fees and costs of the tax planning service. It appears in balance sheet form, giving a very brief description of each transaction, and the amount of money involved. At the end of the year, a balance is computed reflecting whether the client is a debtor to or creditor of the system. A system accounting is not a summary of tax advice given by counsel, nor is it a summary of confidential communications from a client to his attorney.

The district court held the system accountings

are not protected by the attorney-client privilege in that they and each of them constitute a record or compilation of past

ceased. She now seeks to retrieve these system accountings as well. *See* part II(D), *infra*.

transactions publicly conducted, that they and each of them constitute a communication and record of clerical information not conveyed or held in confidence as between attorney and client and that they and each of them do not represent communications made by a client to an attorney acting in a professional capacity as an attorney.

The court also rejected appellant's work product and Fifth Amendment defenses.

## II.

### *Discussion.*

#### A. *Attorney-Client Privilege.*

■ At the outset we note that federal, not state, law governs our decision. *United States v. Hodge and Zweig*, 548 F.2d 1347 (9th Cir. 1977); Fed.R.Evid. 501. Thus, it is to the federal common law we must turn for guidance in this case.

■ We begin with the formulation of the essential elements of the privilege found in 8 Wigmore Evidence § 2292 at 554. (McNaughton rev. 1961).

(1) Where legal advice of any kind is sought

(2) from a professional legal adviser in his capacity as such,

(3) the communications relating to that purpose,

(4) made in confidence

(5) by the client,

(6) are at his instance permanently protected

(7) from disclosure by himself or by the legal adviser,

(8) unless the protection be waived.

Other circuits have relied on this formulation. *E. g., United States v. Goldfarb*, 328 F.2d 280 (6th Cir.), *cert. denied*, 377 U.S. 976, 84 S.Ct. 1883, 12 L.Ed.2d 746 (1964); *Radiant Burners, Inc. v. American Gas Assn.*, 320 F.2d 314 (7th Cir.), *cert. denied*, 375 U.S. 929, 84 S.Ct. 330, 11 L.Ed.2d 262

(1963); *Bouschor v. United States*, 316 F.2d 451 (8th Cir. 1963).

It is important to note that the privilege as defined in Wigmore is limited to "communications . . . made in confidence . . . by the client."[2] *See United States v. United Shoe Machinery Co.*, 89 F.Supp. 357 (D.Mass.1950). The privilege is so limited for a reason. The rationale for the rule is to encourage clients to confide fully in their attorneys without fear of future disclosure of such confidences. This in turn will enable attorneys to render more complete and competent legal advise. *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976); *United States v. Goldfarb, supra; see* 8 Wigmore, *supra*, §§ 2290-91. The purpose of the privilege is to protect and foster the client's freedom of expression. It is not to permit an attorney to conduct his client's business affairs in secret. 8 Wigmore, *supra*, § 2317; *see generally Fisher v. United States, supra.*

■ Of necessity the privilege is not limited to the actual communication by the client to the attorney. Ordinarily the compelled disclosure of an attorney's communications or advice to the client will effectively reveal the substance of the client's confidential communication to the attorney. To prevent this result, the privilege normally extends both to the substance of the client's communication as well as the attorney's advice in response thereto. *See United States v. United Shoe Machinery Corp., supra.* It also extends to those papers prepared by an attorney or at an attorney's request for the purpose of advising a client, provided the papers are based on and would tend to reveal the client's confidential communications. *See United States v. Judson*, 322 F.2d 460 (9th Cir. 1963).

■ The privilege does not extend, however, beyond the substance of the client's confidential communications to the attorney. *Colton v. United States*, 306 F.2d 633 (2d Cir. 1962), *cert. denied*, 371 U.S. 951, 83

---

**2.** The Government contends that appellant was not acting in her capacity as a lawyer, but rather served as an investment counselor or business associate to her clients and conse-

quently no attorney-client privilege is available. We do not pass on the merits of this contention.

S.Ct. 505, 9 L.Ed.2d 499 (1963). It will not conceal everything said and done in connection with an attorney's legal representation of a client in a matter. *United States v. Hodge and Zweig, supra; United States v. Goldfarb, supra.* An attorney's involvement in, or recommendation of, a transaction does not place a cloak of secrecy around all the incidents of such a transaction.

■ For example, facts which an attorney receives from a third party about a client are not privileged. *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947); *United States v. Goldfarb, supra; United States v. United Shoe Machinery Corp., supra;* 8 Wigmore, *supra,* § 2317. Extension of the privilege to this information would not serve to protect and foster the client's freedom of expression. A client has no expectation of confidentiality with respect to these facts. An attorney's subsequent use of this information in advising his client does not automatically make the information privileged. Thus, under the circumstances of this case, the facts of each transaction received from third parties are not privileged.

■ We must decide, however, whether summaries of a client's business transactions with third parties compiled by an attorney from unprivileged facts are entitled to the protection of the privilege. The claimant of the privilege, of course, must bear the burden of proving that he is entitled to this protection. *Cf. United States v. Gurtner,* 474 F.2d 297 (9th Cir. 1973). These summaries, in addition to reflecting facts received from third parties, constitute a communication of sorts by the attorney to the client. To be within the privilege, appellant must show that these summaries directly or indirectly reveal communications of a confidential nature by the client to the attorney. Otherwise, disclosure of the summaries in no way infringes upon the confidentiality of the attorney-client relationship. On the record before us, we cannot say that the summaries will tend to reveal any such confidential communication.[3]

Perhaps an experienced tax planner could glean from the summaries sufficient information to enable him to understand the general tenor of the tax advice given by appellant. This does not, however, supply the required link between the summaries and the privileged communications which is required to extend the privilege.[4] To supply this link, the summaries, or any entry thereon, must be so interwoven with the privileged communications that disclosure of the former leads irresistibly to disclosure of the latter.

Appellant has not demonstrated that such a link exists in the system accountings which the district court ordered produced. Hence, we affirm the district court's holding with respect to the absence of the attorney-client privilege. After compliance with the order, appellant may wish to establish the necessary connection with respect to particular summaries or portions thereof. This she may attempt to do. The district court, after such an effort, should determine whether the connection exists. If it does not, appellant should surrender the information or again be adjudged in contempt.

### B. *Work product immunity.*

■ Appellant argues that the work product immunity should extend to these summaries prepared by appellant as an attorney. We disagree. The limited work

---

3. The inclusion of fee information does not render the summaries confidential. *United States v. Hodge and Zweig,* 548 F.2d 1347 (9th Cir. 1977).

4. We note that the Supreme Court has taken a restrictive view of the reach of the attorney-client privilege.

[S]ince the privilege has the effect of withholding relevant information from the fact-finder, it applies only where necessary to achieve its purpose. Accordingly, it protects only those disclosures—necessary to obtain informed legal advice—which might not have been made absent the privilege.

*Fisher v. United States,* 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976); *see* 8 Wigmore, Evidence § 2291 (McNaughton rev. 1961).

product immunity extends only to certain materials prepared by an attorney in anticipation of litigation. *United States v. Nobles*, 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975); *Hickman v. Taylor, supra*; *Colton v. United States, supra*. The summaries were not prepared in such a setting.

## C. *Fifth Amendment Privilege.*

■ Appellant also invoked the Fifth Amendment on behalf of her clients. She contends that the Fifth Amendment privilege against self-incrimination would be available to her clients with respect to the summaries, and therefore she may invoke their privilege to avoid disclosure of the documents. We disagree.

The recent Supreme Court decision of *Fisher v. United States, supra*, controls appellant's case. In *Fisher*, the Court held that the client's Fifth Amendment privilege would not excuse his attorney from production of documents in the possession of the attorney. This is true because a summons directed at the attorney does not compel the client to be a witness against himself. *Witte v. United States*, 544 F.2d 1026, 1027–28 (9th Cir. 1976). `Absent this element of compulsion, no Fifth Amendment privilege exists. In the case before us, appellant's clients are under no compulsion to "affirm the truth of the content of the documents sought." *Witte v. United States*, 544 F.2d at 1028, *quoting Fisher v. United States*, 425 U.S. at 409, 96 S.Ct. at 1580. Consequently, the Fifth Amendment privilege of appellant's clients does not protect the summaries from disclosure.[5]

## D. *Motion to Strike.*

■ Appellant asks this court to review the district court's denial of appellant's motion to strike from evidence her delivery of two summaries relating to transactions of deceased clients. She contends that at the time of her voluntary delivery, she believed that the attorney-client privilege did not cover these summaries; now, after further thought, she is of the opinion that the privilege does apply to these summaries and wishes that they be struck from evidence to permit her to assert the privilege.

The denial of a motion to strike evidence is not a final decision of the district court, 28 U.S.C. § 1291. Nor does it fall within the group of interlocutory decisions appealable under 28 U.S.C. § 1292. We have no jurisdiction to consider this matter further.

AFFIRMED.

KOELSCH, Circuit Judge, concurring and dissenting:

The majority is on solid ground in ruling that the so-called "summaries" do not constitute privileged "work-product," and that appellant may not invoke vicariously a Fifth Amendment right of her clients. *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), and *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), are dispositive of those assignments.

I do entertain some doubt concerning this court's refusal on a supposed jurisdictional ground to review the district court's order refusing to strike the two inadvertently produced summaries. The nature of this proceeding, collateral as it is to the trial of Margolis, would seem to me to remove that order from the category of a step "towards final judgment in which [it] will merge"

---

**5.** Although under these circumstances the Fifth Amendment privilege does not prevent disclosure of the documents in the attorney's possession, if the client is privileged to refuse to produce the documents under the Fifth Amendment, then the documents are protected by the attorney-client privilege when they are in the attorney's possession. *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976); *Witte v. United States*, 544 F.2d 1026 (9th Cir. 1976). However, as in *Fisher* appellant's clients are not entitled to the Fifth

Amendment privilege with respect to the summaries prepared by appellant. The summaries contain no testimonial declarations of any client. Forced production of the summaries does not compel a client to testify to the truth of the content of the summaries, *Fisher v. United States*, 425 U.S. at 409, 96 S.Ct. at 1580; *Witte v. United States*, 544 F.2d at 1027–28, nor does it compel authentication of incriminating evidence. *See Andersen v. Maryland*, 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976); *Witte v. United States, supra.*

(*Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949) ), and to bring it within the purview of 28 U.S.C. § 1291.

However, that small difference aside, I wholly disagree with the majority's conclusion that on this record the attorney-client privilege does not operate to shield the summaries from production and disclosure.

The attorney-client privilege, as I understand it, is that of the client and is intended to protect from public disclosure confidential communications he makes to his attorney in connection with legal matters. Necessarily, the privilege is not narrowly applied, for it would be a poor thing indeed if an attorney could be compelled to disclose the advice given his client in response to such a communication, for the essence of the communication would necessarily inhere in the response and be fairly deducible from it.

Here we are not concerned with a recalcitrant attorney-witness but with documents prepared by the attorney. If the issue were as the majority postulates, simply "whether summaries of a client's business transactions with third persons compiled by an attorney from unprivileged facts are entitled to the protection of the privilege," I would certainly join in voting to affirm. But the record does not provide such an easy springboard. The summaries are constituted of a melange of facts. Appellant testified before the district court that the information from which the documents were compiled was derived from manifold sources: from communications by the client, from co-counsel, from public records, and in part from calculations made by counsel on the basis of such composite information and not reflected in any other document. The documents sought by the government are thus amalgams as far as the source of their content is concerned: in part derived from communications from the client intended to be confidential, in part from public, non-confidential sources.

Of course, as the majority points out, it is not enough that an experienced tax planner might be able to "glean from the summaries sufficient information to enable him to understand the general tenor of the tax advice given by appellant." If that were the extent of the deduction, then the privilege, being that of the client, would not be violated. But I suggest the "experienced tax planner" could most likely deduce much more. Advice in the abstract in tax matters is not the norm. It most generally is based upon specific information.

In my view, a document need not, as the majority declares, "irresistibly" disclose a confidential communication in order to be protected by the privilege; if it is such as to reasonably permit such a communication to be deduced, I would honor the privilege and protect the client.

I would reverse.