No. 04-699

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 103

————————————

INTER-FLUVE, a Montana Corporation,    )
    )
    Relator,    )
    )    O P I N I O N
    v.    )    &
    )    O R D E R
MONTANA EIGHTEENTH JUDICIAL    )
DISTRICT COURT, GALLATIN COUNTY,    )
THE HONORABLE MIKE SALVAGNI,    )
Presiding Judge,    )
    )
    Respondent.    )

————————————

¶1 Inter-Fluve, Inc. (Inter-Fluve), seeks a writ of supervisory control, arguing that the District Court of the Eighteenth Judicial District, Gallatin County, is proceeding based on a mistake of law in controlling discovery proceedings with respect to the attorney-client privilege. "Discovery of potentially-privileged material presents unique issues which we have, under certain circumstances, found sufficient to invoke original jurisdiction." *Winslow v. Mont. Rail Link, Inc.*, 2001 MT 269, ¶ 2, 307 Mont. 269, ¶ 2, 38 P.3d 148, ¶ 2. Here, however, we decline to exercise supervisory control. Our resolution of Inter-Fluve's petition is patterned after that of *Hegwood v. Mont. Fourth Judicial Dist. Ct.*, 2003 MT 200, 317 Mont. 30, 75 P.3d 308, another petition that arose from discovery proceedings, in that we set forth a legal analysis supporting our refusal to exercise supervisory control.

1

¶2     We address the following issues:

¶3     (1)  Is this an appropriate case for the exercise of supervisory control?

¶4     (2) Is the confidentiality of the attorney-client privilege violated when a former director of a closely-held corporation, who has brought claims against the corporation, is allowed to discover communications between corporate counsel and other directors which occurred during his tenure as a director?

## FACTUAL AND PROCEDURAL BACKGROUND

¶5     Inter-Fluve is a closely-held Montana corporation with its principal office in Hood River, Oregon.  At the time of the conflict which spawned the lawsuit underlying this petition, Gregory Koonce (Koonce), Lon Mikkelsen (Mikkelsen) and Dale Miller (Miller) were the directors of the corporation, each holding a one-third interest therein as shareholders.  Miller was employed as the manager of Inter-Fluve's Bozeman office, while Mikkelsen managed the Hood River office where he worked with Koonce.  Ever since the incorporation of the business, Miller was a shareholder and a member of the Board of Directors.  Additionally, Miller had previously served as Inter-Fluve's president.

¶6     On March 11, 2002, Mikkelsen and Koonce terminated Miller's employment with Inter-Fluve.  Thereafter, Miller resigned his directorship and initiated the underlying litigation.  In doing so, Miller brought a claim of wrongful discharge against Inter-Fluve and a claim of corporate oppression against Mikkelsen and Koonce.  Subsequently, Inter-Fluve brought counterclaims against Miller, alleging conversion and violation of the Uniform Trade Secrets Act.

2

¶7 During discovery, Miller sought to depose Calvin Braaksma (Braaksma), who had served as corporate counsel for Inter-Fluve in Bozeman with the firm Landoe, Brown, Planalp, Braaksma & Reida. As part of the deposition, Miller wanted to inquire about the substance of certain communications between Braaksma and Inter-Fluve which occurred during Miller's tenure as a director.

¶8 Inter-Fluve filed a motion for a protective order pursuant to Rule 26(c), M.R.Civ.P., asking the District Court to prevent Miller from questioning Braaksma about the substance of attorney-client communications, including conversations related to the termination of Miller's employment with Inter-Fluve. In support of this request, Inter-Fluve asserted that the attorney-client privilege extends to corporations, and the privilege covers conversations which Mikkelsen and Koonce had with Braaksma because they had engaged Braaksma on behalf of Inter-Fluve. Hence, Inter-Fluve argued that Miller was not entitled to discover these conversations, regardless of his status as a director at that time the communications occurred, because the privilege belongs to the corporation, not the directors.

¶9 In response to Inter-Fluve's request for a protective order, Miller raised several arguments to support his contention that he was entitled to depose Braaksma regarding these communications. Miller argued that Mikkelsen and Koonce had conducted these communications in their respective capacities as directors of Inter-Fluve, that these communications occurred without his knowledge and that his status as a former director entitled him to access these communications which occurred during his tenure as a director. Additionally, Miller claimed that corporate funds were used to pay the fee for these

3

communications. Consequently, Miller asserted that he, as a thirty-three percent shareholder, had effectively paid thirty-three percent of the bill for these communications. Finally, Miller claimed that Mikkelsen and Koonce had engaged Braaksma for the purpose of affecting Miller's relationship with Inter-Fluve, and that Braaksma's advice was used to the detriment of Miller. Inter-Fluve responded by arguing that a former director does not have the authority to waive the attorney-client privilege of a corporation.

¶10 Another point of contention arose when Miller's counsel deposed Mikkelsen and Koonce, asking them about the substance of communications with Inter-Fluve's corporate counsel prior to Miller's termination. Mikkelsen and Koonce declined to answer these questions, asserting the attorney-client privilege. Consequently, Miller filed a motion to compel, asking the District Court to order Mikkelsen and Koonce to respond to these questions. In doing so, Miller asserted that Koonce and Mikkelsen had secretly consulted with corporate counsel in both Bozeman and Oregon to secure advice in furtherance of a conspiracy to terminate Miller's employment. Further, Miller asserted that these consultations were paid for with corporate funds. In response, Inter-Fluve restated the arguments made in its motion for a protective order.

¶11 Finally, Inter-Fluve filed a motion *in limine*, asking the District Court to limit the scope of Miller's questioning with respect to any legal advice sought by Mikkelsen and Koonce, either individually or on behalf of Inter-Fluve, regarding the termination of Miller's employment. Inter-Fluve requested this relief *in limine* so as to avoid any prejudice that might accompany the rightful invocation of the attorney-client privilege in front of the jury.

4

¶12    The District Court dealt with these motions in its Decision and Order of October 4, 2004 (Order).  With respect to Inter-Fluve's motion for a protective order, the District Court determined that the defendants were not entitled to assert the attorney-client privilege against Miller as to communications between Inter-Fluve and Braaksma which occurred during Miller's tenure as director.  In reaching this conclusion, the District Court stated that in order for Koonce and Mikkelsen to obtain legal advice regarding corporate matters and keep such advice from Miller, they would have had to retain separate counsel and pay for such with non-Inter-Fluve funds.  As such, the District Court denied Inter-Fluve's motion for a protective order.

¶13    With regard to Miller's motion to compel, the District Court considered whether alleged communications between Inter-Fluve and corporate counsel other than Braaksma were privileged as against Miller.  The District Court concluded that Miller was entitled to discover communications between Inter-Fluve and all other attorneys acting as counsel for Inter-Fluve, but specified that Miller was not entitled to access any such communications which occurred after his resignation as a director.  Additionally, the District Court specified that Miller was not entitled to discover attorney-client communications made by or to Mikkelsen and/or Koonce when the client was not Inter-Fluve.  Hence, the District Court granted Miller's motion to compel in part, and denied it in part.

¶14    As for Inter-Fluve's motion *in limine*, the District Court first reiterated its conclusions regarding the previous motions.  Then, the District Court partially granted the motion in that it specified that Miller could not ask questions regarding any attorney-client communications

5

either: (1) made after his resignation as a director; or (2) made by or to counsel when Inter-Fluve was not the client. The District Court denied the motion as to communications made during Miller's tenure as director by or to any attorney who represented Inter-Fluve.

¶15 Inter-Fluve applied for a writ of supervisory control, arguing that the District Court is proceeding under a mistake of law with respect to its interpretation of the attorney-client privilege.

## DISCUSSION

### ISSUE ONE

¶16 *Is this an appropriate case for the exercise of supervisory control?*

¶17 This Court exercises supervisory control in appropriate cases pursuant to the authority granted in Article VII, Section 2(2) of the Montana Constitution, and Rule 17(a), M.R.App.P. *Evans v. Mont. Eleventh Judicial Dist. Ct.*, 2000 MT 38, ¶ 16, 298 Mont. 279, ¶ 16, 995 P.2d 455, ¶ 16. The use of this power is appropriate where the district court is proceeding based on a mistake of law which, if uncorrected, would cause significant injustice for which an appeal is an inadequate remedy. *Truman v. Mont. Eleventh Judicial Dist. Ct.*, 2003 MT 91, ¶ 13, 315 Mont. 165, ¶ 13, 68 P.3d 654, ¶ 13 (citing *Park v. Mont. Sixth Judicial Dist. Ct.*, 1998 MT 164, ¶ 13, 289 Mont. 367, ¶ 13, 961 P.2d 1267 ¶ 13). In determining the propriety of supervisory control for a particular case, we are mindful that it is an extraordinary remedy. *Evans,* ¶ 15. Consequently, we have followed the practice of proceeding on a case-by-case basis while taking care not to substitute the power of supervisory control for an appeal. *Preston v. Mont. Eighteenth Judicial Dist. Ct.* (1997), 282 Mont. 200, 204, 936 P.2d 814,

6

816 (citing *Plumb v. Fourth Judicial Dist. Ct.* (1996), 279 Mont. 363, 370, 927 P.2d 1011, 1015).

¶18 Inter-Fluve's request for supervisory control arises out of that part of the District Court's Order which allows Miller to discover communications between the corporation's current directors and its corporate counsel that were conducted while Miller was a director. Inter-Fluve asserts that the District Court is proceeding under a mistake of law in its interpretation of the attorney-client privilege, and that this mistake constitutes a significant injustice. Upon these contentions, Inter-Fluve argues that supervisory control is necessary because the discovery allowed by the District Court's Order will permanently foreclose the opportunity to properly protect the privileged communications, and thus no adequate remedy can be achieved through a normal appeal.

¶19 We conclude that this is not an appropriate case for our exercise of supervisory control because, as explained below, the District Court's Order is not premised on a mistake of law.

## ISSUE TWO

¶20    *Is the confidentiality of the attorney-client privilege violated when a former director of a closely-held corporation, who has brought claims against the corporation, is allowed to discover communications between corporate counsel and other directors which occurred during his tenure as a director?*

¶21    The attorney-client privilege is codified in § 26-1-803, MCA, which provides:

> (1) An attorney cannot, without the consent of his client, be examined as to any communication made by the client to him or his advice given to the client in the course of professional employment.
> (2) A client cannot, except voluntarily, be examined as to any communication made by him to his attorney or the advice given to him by his attorney in the course of the attorney's professional employment.

¶22    This privilege is the oldest of the privileges for confidential communications known to the common law. *State ex rel. United States Fid. and Guar. Co. v. Mont. Second Judicial Dist. Ct.* (1989), 240 Mont. 5, 10, 783 P.2d 911, 914.  We have previously stated:

> The fundamental purpose of the attorney-client privilege is to enable the attorney to provide the best possible legal advice and encourage clients to act within the law.  The privilege furthers this purpose by freeing clients from the consequences or the apprehension of disclosing confidential information, thus encouraging them to be open and forthright with their attorneys.

*Palmer by Diacon v. Farmers Ins. Exch.* (1993), 261 Mont. 91, 106, 861 P.2d 895, 904.  We have also stated that "[a]nother important policy behind the attorney-client privilege is to foster the attorney-client relationship by ensuring that attorneys are free to give accurate and candid advice without fear that the advice will later be used against the client." *Palmer*, 261 Mont. at 107, 861 P.2d at 904-05.

¶23    The attorney-client privilege attaches to both individuals and corporations, but "complications in the application of the privilege arise when the client is a corporation,

8

which in theory is an artificial creature of the law, and not an individual . . . ." *Upjohn Co. v. United States* (1981), 449 U.S. 383, 389-90, 101 S.Ct. 677, 682-83, 66 L.Ed.2d 584. This petition presents just such a complication.

¶24 Inter-Fluve asserts that individual directors of a corporation are not clients in the attorney-client relationship between a corporation and its legal counsel. Rather, there is only one client--the corporation. As such, Inter-Fluve contends, the attorney-client privilege belongs to the corporation, acting through a majority of its directors, and it does not belong to individual directors.

¶25 Applying these contentions to this case, Inter-Fluve argues that: (1) Miller was never the client with respect to the attorney-client communications at issue; (2) when Mikkelsen and Koonce met with Inter-Fluve's corporate counsel to discuss legal issues facing the corporation, they did so on behalf of Inter-Fluve, and thus the attorney-client privilege applies to those discussions; (3) it is irrelevant that Miller was a director when Mikkelsen and Koonce met with corporate counsel because the attorney-client privilege belongs to Inter-Fluve only, acting through a majority of its directors, and not individual directors; and (4) Miller is not entitled to waive Inter-Fluve's attorney-client privilege, as only the corporation may do so through its current directors. Thus, Inter-Fluve concludes that its attorney-client privilege will be violated if Miller is allowed to discover the privileged communications at issue.

¶26 Additionally, Inter-Fluve argues that it is a matter of good public policy to allow a majority of a corporation's board of directors, in their determination of what is best for the

9

corporation, to seek confidential legal advice from corporate counsel regarding the termination of an employee who is also a director, officer or shareholder. Finally, Inter-Fluve suggests that we consider that Miller no longer has a fiduciary duty to act in the best interests of the corporation, and his interests are now contrary to those of Inter-Fluve.

¶27 Miller argues that he is entitled to discover the attorney-client communications at issue because he was a client with respect to such communications during his tenure as a director. In support of this contention, Miller advances a "joint client" theory which specifies that because a corporate entity can only act through people, and because the directors are a collective body responsible for managing the corporation, the directors are properly considered joint clients with respect to legal advice given to the corporation. Pursuant to this theory, Miller argues that because he was a member of the Board of Directors, the collective body responsible for managing Inter-Fluve, he was thus entitled to access the legal advice received from corporate counsel during his tenure. Thus, Miller argues, since he was entitled to access these communications at the time they occurred, it would be a perversion of the attorney-client privilege to now deny him access to that information simply because he is no longer a director. As such, Miller concludes that the attorney-client communications at issue should not be considered privileged as against him.

¶28 Miller argues that we should adopt this "joint client" theory because it recognizes that individuals must act on behalf of legal entities, and it acknowledges that all of a corporation's directors, not just a select or privileged group thereof, are entitled to the advice of corporate counsel. Further, Miller argues that such a theory properly reflects the realities of

10

a closely-held corporation. For example, in reality, the line between the entity and the individuals who own or control the entity, often becomes blurred in a closely-held corporation. The reality of Inter-Fluve, Miller argues, was that he, Koonce and Mikkelsen were engaged in a joint undertaking, as shown by the fact that the three shareholders also made up the Board of Directors. Lastly, Miller argues that Inter-Fluve's corporate counsel represented all parties to the joint undertaking and, consequently, select members of that group can not rightly assert the attorney-client privilege as a basis for withholding legal advice received during the joint undertaking.

¶29    In terms of policy implications, Miller argues that if the attorney-client privilege can be used in the way Inter-Fluve argues for, it would promote the covert use of corporate resources by directors in order to gain potentially wrongful advantage over each other. Conversely, Miller argues, the "joint client" approach would essentially eliminate the potential for wrongful use of corporate counsel. With the "joint client" approach established, Miller suggests that if a group of directors in a closely-held corporation seek legal advice regarding the actions of a fellow director, and if they wish to keep such advice confidential as against that fellow director, they can simply retain and pay for their own counsel.

¶30    The parties agree that an attorney-client relationship existed between Inter-Fluve and its corporate counsel, and that any communication conducted pursuant to that relationship is cloaked in the confidentiality of the attorney-client privilege.

¶31    We first address Inter-Fluve's contention that Miller has no power to waive the corporation's attorney-client privilege, as only the corporation may do so through its current

11

directors. While we agree with this argument, we observe that it does not resolve the issue of whether Inter-Fluve may assert the privilege against Miller to preclude him from accessing the attorney-client communications at issue. As stated in *Gottlieb v. Wiles* (D.Colo. 1992), 143 F.R.D. 241, 247, "[t]he fact that former officers and directors lack the power to waive the corporate privilege does not resolve the question of whether they themselves are precluded by the attorney-client privilege or work product doctrine from inspecting documents generated during their tenure." Here, Miller's request to access these communications is not an attempt to waive Inter-Fluve's attorney-client privilege. Waiver is the voluntary relinquishment of a known right. *Kuiper v. District Court* (1981), 193 Mont. 452, 460, 632 P.2d 694, 698. Miller does not attempt to relinquish a right, rather, he seeks to assert his right to access attorney-client communications conducted during his tenure as a director.

¶32 In order to determine whether Miller is entitled to discover the attorney-client communications at issue, we must ascertain who the client was with respect to those communications. Inter-Fluve contends that only the corporation is the client, not individual directors, and thus the attorney-client privilege belongs only to the corporation. Hence, Inter-Fluve argues that Miller is not entitled to discover the attorney-client communications at issue because he was never the client.

¶33 While we accept the premise that the corporation is the client, we observe that a corporation can only act through a person or persons to carry out its many functions, such as receiving legal advice and waiving or asserting the attorney-client privilege. Montana's

12

statutory law establishes that corporate powers are exercised through a board of directors. Section 35-1-416(2), MCA, provides:

> Subject to any limitation set forth in the articles of incorporation, all corporate powers must be exercised by or under the authority of the board of directors, and the business and affairs of the corporation must be managed under the direction of its board of directors.

Further, the United States Supreme Court has explained, regarding the attorney-client privilege:

> As an inanimate entity, a corporation must act through agents. A corporation cannot speak directly to its lawyers. Similarly, it cannot directly waive the privilege when disclosure is in its best interest. Each of these actions must necessarily be undertaken by individuals empowered to act on behalf of the corporation.

*Commodity Futures Trading Comm'n v. Weintraub* (1985), 471 U.S. 343, 348, 105 S.Ct. 1986, 1991, 85 L.Ed.2d 372. This principle is reflected in Rule 1.13(a) of the Montana Rules of Professional Conduct, which provides that "[a] lawyer employed or retained by an organization represents the organization acting through its duly authorized constituents."

¶34   The Wisconsin Supreme Court has dealt with the issue that we consider here. In *Lane v. Sharp Packaging Systems, Inc.* (Wis. 2002), 640 N.W.2d 788, the court considered whether a corporation, Sharp Packaging Systems, could invoke the attorney-client privilege against Lane, who was a former member of the corporation's board of directors, regarding attorney-client communications conducted during Lane's tenure as a director. The majority of the court concluded that the corporation could effectively assert the attorney-client

privilege against Lane. *Lane*, ¶ 34. In he`r dissent, Chief Justice Abrahamson argued a "joint client" theory, stating:

> [T]he client is the corporate entity; the corporate entity can act only through people; the directors are the collective body that has the responsibility to manage the corporation; and consistent with their joint obligations, the directors are the joint clients when legal advice is given to the corporation through one of its officers or directors. Lane was part of the collective body and was, therefore, entitled to have access to the legal advice Sharp Packaging received during Lane's tenure on the board. This legal information cannot be privileged against Lane. An attorney may not withhold legal advice from his or her own client.

*Lane*, ¶ 80.

¶35 We find this reasoning persuasive. Thus, we conclude that while Inter-Fluve was the client with respect to the attorney-client communications at issue here, the directors were joint clients with Inter-Fluve. As corporate directors are jointly responsible for the proper management of a corporation, it is consistent with this joint obligation that they be treated as joint clients with the corporation when legal advice is rendered to the corporation through one of its officers or directors. *Kirby v. Kirby* (Del. Ch. 1987), 1987 WL 14862, at *7, 1987 Del. Ch. LEXIS 463, at *19. When Miller was a part of the collective body of Inter-Fluve's Board of Directors, he was entitled to access the attorney-client communications occurring between corporate counsel and the other directors. The fact that Miller is no longer a director is not sufficient cause to render these communications privileged as against him. As the United States District Court for the District of Colorado observed in a case where it considered whether a former director was precluded by the attorney-client privilege from inspecting documents generated during his tenure:

14

An analogous situation presents itself when parties with a common interest retain a single attorney to represent them. When they later become adverse, neither is permitted to assert the attorney-client privilege as to communications occurring during the period of common interest.

*Gottlieb*, 143 F.R.D. at 247.

¶36 To allow Inter-Fluve to assert the attorney-client privilege against Miller would not promote the principles underlying the attorney-client privilege. As stated in *Moore Bus. Forms, Inc. v. Cordant Holdings Corp.* (Del. Ch. 1996), 1996 WL 307444, at *6, 1996 Del. Ch. LEXIS 56, at *18, "[b]ecause the attorney-client privilege belongs to the client, it would be perverse to allow the privilege to be asserted *against* the client."

¶37 We hold that the confidentiality of the attorney-client privilege is not violated when a former director of a closely-held corporation, who has brought claims against the corporation, is allowed to discover communications between corporate counsel and other directors which occurred during his tenure as a director.

¶38 Having determined that the District Court's Order is not premised on a mistake of law, we must now conclude that Inter-Fluve's Petition for a Writ of Supervisory Control is DENIED.

DATED this 26th day of April, 2005.

/S/ JAMES C. NELSON
/S/ PATRICIA O. COTTER
/S/ JOHN WARNER

15

Chief Justice Karla M. Gray, concurring in part and dissenting in part.

¶39    I concur in the Court's denial of Inter-Fluve's petition for writ of supervisory control, but respectfully dissent from its approach to this cause number. I erred in joining that portion of the Court's order herein of December 7, 2004, in which we stated our intention to issue a published opinion. I also recognize I erred in joining our Order and Opinion in *Hegwood*, setting forth a full legal analysis of the legal question at issue before denying the petition for supervisory control on the grounds it did not meet our criteria for supervisory control.

¶40    It is my view that we should first determine whether a petition for supervisory control meets our criteria for the exercise of supervisory control; we did so in this case. If and when we determine a supervisory control petition does not meet our criteria, we should state that conclusion in a very brief order and then merely deny the petition. Taking the time, and using our limited resources, to present a full legal analysis under circumstances such as those before us here is simply unwise from a variety of perspectives.

¶41    First, we must recognize that, even when the parties agree an issue should be decided pursuant to supervisory control, as they have in this case, bringing an original proceeding in this Court for that purpose results in delays in the underlying proceeding. While the record before us in the present matter is limited, it is clear that the District Court action was filed in 2002. Motions to compel, for a protective order, *in limine* and to reopen discovery were filed from March of 2003 through July of 2004, after defendants moved for summary

16

judgment. The District Court issued the order before us here early in October of 2004. The petition also was filed in this Court that month. By December 27, 2004, briefing on the petition was completed and the parties stipulated to no further briefing. Four months have passed since that time, a relatively short period of time for this Court to be ready to issue an opinion. At the bottom line, this petition has delayed further proceedings in the District Court for approximately five-and-one-half months in a case filed three years ago and still not at the summary judgment stage in the trial court. I am not persuaded that the litigants' rights to justice without unreasonable delay are met by proceeding in this fashion.

¶42    Moreover, at the time the briefing in this matter was complete and it became possible to begin preparing an order or, as here, an opinion, this Court had significantly more than 100 cases ready for authoring. Most of those cases had finally made their way to this Court after full trial court proceedings and judgment, followed by direct appeal, and had been pending for some time. Some remain pending even now, and have been "preempted" by our attention and effort on this petition for supervisory control and our decision to write a full opinion herein when such an opinion simply is not necessary. In 2003, our overall case filings were 860; in 2004, those filings were 882. In the face of our increasing workload, and the fact that we are primarily an "appeal of right" Court, it strikes me as inherently very unfair to our appellate litigants when we unnecessarily divert our efforts from their appeals to the extent we do here or in other similar matters by issuing a full opinion. This is particularly true when we have long been unable to issue quality opinions in appeals within the time parameters we believe are appropriate.

17

¶43 Finally, issuing a full opinion deciding a legal issue, merely to ultimately determine the trial court was correct and/or that the regular remedy of appeal is sufficient, in essence grants an interlocutory appeal of an issue that can--and should--be raised on appeal after judgment in the district court. We need not--and should not--do so. We should merely issue a short order stating, in this case:

> Inter-Fluve has petitioned this Court for a writ of supervisory control. Having determined our criteria for the exercise of supervisory control have not been met,
> IT IS ORDERED the Petition is DENIED.

¶44 We could have done so months ago, returned this case to the District Court, and turned our own attention back to our primary work.

¶45 For these reasons, while I agree the petition must be denied, I dissent from the approach the Court uses to deny the petition.

/S/ KARLA M. GRAY

Justice Jim Rice dissenting.

¶46 I would conclude that the District Court is proceeding under a mistake of law and, deeming this matter to be appropriate for supervisory control, would exercise the same and reverse the order entered by the District Court. Although I agree with undertaking review of the merits of the petition, I must dissent from the Court's failure to exercise supervisory control under Issue 1. In support of exercising supervisory control, I find persuasive the Supreme Court of Wisconsin's review by certiorari of an interlocutory appeal, where discovery issues similar to those here arose in litigation between a dissident director and a corporation, in *Lane v. Sharp Packaging Sys., Inc.* (Wis. 2002), 640 N.W.2d 788.

¶47 I dissent to Issue 2. The Court essentially disregards the concrete legal principle that a corporation is a client–indeed, is the actual or "true" client here–who has actual legal interests that must be protected by the attorney-client privilege. Instead, it adopts the fictional "joint client theory," and pursuant thereto holds that the true client's interests in preserving the confidentiality of its communications with counsel may not be protected by assertion of the privilege against a former director who was serving on the board at the time the communications occurred. Thus, the true client's interests are subordinated to a creature of fiction–that is, the concept that individual directors are also "clients," and even more, that the interests of those individual directors are superior to the interests of the corporation they serve. Henceforth, a single corporate board member can force open confidential communications between the corporation's counsel and corporate representatives authorized to conduct legal business. Thus, in these situations, the true client's rights are effectively destroyed.

19

¶48 The authority cited by the Court in support of the "joint client theory" consists of a dissenting opinion in *Lane* and the 1992 United States District Court decision in *Gottlieb*, which has since been widely criticized. I would reject these sources in favor of the strong majority position in the country, which is both well-supported and well-reasoned, as represented by the majority in *Lane*:

> The corporation's lawyer does not need to worry about representing the interests of every member (or former member) of the corporation's board of directors. Accordingly, only the client corporation or the corporation's lawyer, acting on the corporation's behalf, can waive the lawyer-client privilege. We disagree with the dissent's interpretation that applying the entity rule makes the lawyer "become the corporation's guardian ad litem."
>
> We further conclude that even though the documents were created during Lane's tenure as a director, Lane is not entitled to the documents in Niebler's files. As the United States Supreme Court stated in *Weintraub*, "the power to waive the corporate attorney-client privilege rests with the corporation's management and is normally exercised by its officers and directors." 471 U.S. at 348, 105 S.Ct. 1986. The Scarberrys currently comprise Sharp's board of directors, or management, and retain control over Sharp's lawyer-client privilege. Lane is a former director, and a "dissident." We agree with the court's reasoning in *Milroy*: "A dissident director is by definition not 'management' and, accordingly, has no authority to pierce or otherwise frustrate the attorney-client privilege when such action conflicts with the will of 'management.'" 875 F.Supp. 646, 649-650. Accordingly, we conclude that even though Lane is a former officer and director, and the documents at issue were prepared during his tenure, Sharp can effectively assert the lawyer-client privilege against him.

*Lane*, ¶ 33 n.14, ¶ 34. Thus, a corporation, as directed by the current corporate principals, retains its attorney-client privilege and the power to assert it. A dissident board member has no power to waive it. I would so hold.

¶49 The decision in *Gottlieb*, upon which the Court relies, has been roundly criticized. United States District Courts in *Bushnell v. Vis Corp.* (N.D. Cal. 1996), 1996 U.S. Dist.

20

Lexis 22572, and *Milroy v. Hanson* (D. Neb. 1995), 875 F.Supp. 646, have stated that

*Gottlieb* "made a 'fundamental error' in failing to recognize that 'there is but one client, and

that client is the corporation.'" *Bushnell*, at 13. Recently, the United States District Court

for the Northen District of Illinois concluded that "*Gottlieb* does not reflect a correct

application of the law of corporate privilege . . . ." *Dexia Credit Local v. Rogan*, 2004 U.S.

Dist. Lexis 25635, at 24. In another recent analysis of *Gottlieb*, the Court of Appeals of

Colorado disagreed with its holding and concluded:

> We agree with the court's reasoning in *Milroy*. Although plaintiff's status as a former director would have entitled him to learn privileged information when he was a director, he would then have been duty bound to keep such information confidential. He would not have been entitled alone to assert or waive the privilege on behalf of [the corporation].

*Genova v. Longs Peak Emergency Physicians, P.C.* (Colo. Ct. App. 2003), 72 P.3d 454, 463.

¶50 In *In re Mktg. Investors Corp.* (Tex. Ct. App. 1998), 80 S.W.3d 44, the Texas Court

of Appeals analyzed *Gottlieb* and responded as follows:

> *Gottlieb* and its progeny recognize a collective corporate or "common interest" client which may take a position adverse to the corporation and still prevent the application of the attorney-client privilege. *Gottlieb*, 143 F.R.D. at 246-47. *Milroy* expressly disapproves of this and holds there is but one client–the corporation. *Milroy*, 875 F.Supp. at 649. The *Milroy* line of cases hold that a former officer or director who is seeking documents in a personal capacity, not in a fiduciary capacity, does not act as corporate "management." *Milroy*, 875 F.Supp. at 650. And has "no authority to pierce or otherwise frustrate the attorney-client privilege when such action conflicts with the will of management." *Id.*

> We find the *Milroy* line of cases more persuasive. Those cases hold that the privilege belongs to the corporation. Only the corporation may permit access to its attorney-client communications. When the Corporation terminated MacDonald's employment, he no longer had the Corporation's permission to view or possess any of the corporation's documents. The

Corporation is a separate entity and should not lose its valuable legal rights because it can only act through its employees. We conclude the attorney-client privilege applies against MacDonald's possession of the Corporate documents. To hold otherwise would mean that the employee and the Corporation share the privilege.

*In re Mktg. Investors Corp.*, 80 S.W.3d at 50.

¶51    I agree that a corporation "should not lose its valuable legal rights because it can only act through its employees." I would reverse the District Court.

/S/ JIM RICE