Justice Laurie McKinnon, dissenting.
¶ 23 I dissent from the Court's conclusion that the plain language of § 26-1-803(1), MCA, "prohibits the District Court from compelling Sweeney to testify about communications made with McClanahan without his consent when her testimony would prove the elements of a new charge against McClanahan." Opinion, ¶ 15. To reach its conclusion, the Court oversimplifies the statute by focusing on one word, "examined," and fails to consider the rest of the statute. The attorney-client privilege is supposed to be construed narrowly, but the Court does the opposite, inexplicably broadening the privilege's scope. Considering the statute as a whole, I conclude that the attorney-client privilege does not preclude the District Court from compelling Sweeney's testimony regarding whether she notified McClanahan of the final pretrial conference date.
¶ 24 Section 26-1-803(1), MCA, provides, "An attorney cannot, without the consent of the client, be examined as to any communication made by the client to the attorney or the advice given to the client in the course of professional employment." The Court's role in construing a statute "is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." Section 1-2-101, MCA. We consistently acknowledge a "well-established rule" that when "construing a statute, it must be read as a whole, and its terms should not be isolated from **231 the context in which they were used by the Legislature." Fellows , ¶ 21 (quoting Price , ¶ 47 ); accord State v. Nye , 283 Mont. 505, 510, 943 P.2d 96, 99 (1997) ; State v. Lilburn , 265 Mont. 258, 266, 875 P.2d 1036, 1041 (1994). While recognizing that a statute must be read as a whole and that its terms should not be isolated from their context, the Court does precisely the opposite, isolating the word "examined" and omitting the remainder of § 26-1-803(1), MCA. Opinion, ¶¶ 12, 14.
¶ 25 The plain language of § 26-1-803(1), MCA, in its entirety, provides that an attorney, absent client consent, cannot be examined as to (1) communication made by the client to the attorney; or (2) advice given to the client in the course of professional employment. The statute, read without omitting language that the Legislature explicitly included, does not completely preclude an attorney from being examined, as the Court concludes. Opinion, ¶ 14. Instead, the statute provides that an attorney cannot be examined as to two distinct types of information. In this case, the issue is whether, absent client consent, the District Court can compel Sweeney to testify regarding whether she notified McClanahan of the hearing date. Thus, the question before the Court is whether requiring an attorney to testify about publicly available information she provided her client constitutes requiring an attorney to be "examined as to ... advice given to the client in the course of professional employment." See § 26-1-803(1), MCA (emphasis added). I would find that, based on the plain language of the statute, the purpose of the attorney-client privilege, and guidance from a significant number of other jurisdictions that have addressed the same issue, Sweeney informing McClanahan of the hearing date is not "advice given to the client in the course of professional employment" and therefore the attorney-client privilege does not protect Sweeney from testifying about such information.
¶ 26 The "fundamental purpose of the attorney-client privilege is to enable the attorney to provide the best possible legal advice and encourage clients to act within the law." Am. Zurich Ins. Co. v. Mont. Thirteenth Judicial Dist. Court , 2012 MT 61, ¶ 9, 364 Mont. 299, 280 P.3d 240 (quoting Inter-Fluve v. Mont. Eighteenth Judicial Dist. Court , 2005 MT 103, ¶ 22, 327 Mont. 14, 112 P.3d 258 ). The privilege furthers its purpose by protecting confidential information a client shares with his attorney, which frees "clients from the consequences or the apprehension *193 of disclosing confidential information, thus encouraging them to be open and forthright with their attorneys." Am. Zurich Ins. Co. , ¶ 9 (quoting Inter-Fluve , ¶ 22 ). The privilege also protects legal advice an attorney provides to her client, as the attorney's advice in **232 response to the client's confidential communication will likely reveal the substance of the client's communication. P a lmer ex rel. Di a con v. Farmers Ins. Exch. , 261 Mont. 91, 107, 861 P.2d 895, 905 (1993); In re Fischel , 557 F.2d 209, 211 (9th Cir. 1977). The privilege encourages "full and frank communication between attorneys and their clients and thereby promote[s] broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy depends upon the lawyer's being fully informed by the client." U.S. Fid. & Guar. Co. , 240 Mont. at 10, 783 P.2d at 914 (quoting Upjohn Co. v. United States , 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981) ).
¶ 27 The attorney-client privilege does not, however, protect every piece of information shared between an attorney and her client. We continuously construe the attorney-client privilege narrowly, as it "obstructs the truth-finding process." Am. Zurich Ins. Co. , ¶ 10 ; Nelson v. City of Billings , 2018 MT 36, ¶ 31, 390 Mont. 290, 412 P.3d 1058. Thus, the privilege "protects only those disclosures-necessary to obtain informed legal advice-which might not have been made absent the privilege." Am. Zurich Ins. Co. , ¶ 10 (quoting Fisher v. United States , 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976) ); Draggin' Y Cattle Co. v. Addink , 2013 MT 319, ¶ 41, 372 Mont. 334, 312 P.3d 451. The Court isolates § 26-1-803(1), MCA, from the attorney-client privilege's eight essential elements we enumerated in U.S. Fidelity and Guaranty Company v. Montana Second Judicial District Court on the basis that the statute's language resolves the issue. Opinion, ¶ 11. This Court, however, consistently interprets the statutory and common law attorney-client privileges, and the policy choices behind them, together. See , e.g. , U.S. Fidelity & Guar. Co. , 240 Mont. at 11, 783 P.2d at 914-15 (citing both the statutory and common law privileges and then applying both to the facts). The eight elements, like the statutory privilege, differentiate between whether the client or the attorney conveyed the information:
(1) Where legal advice of any kind is sought
(2) from a professional legal advis[e]r in his capacity as such,
(3) the communications relating to that purpose,
(4) made in confidence
(5) by the client ,
(6) are at this instance permanently protected
(7) from disclosure by himself or by the legal adviser,
(8) unless the protection be waived.
U.S. Fid. & Guar. Co. , 240 Mont. at 11, 783 P.2d at 914-15 (quoting **233 Admiral Ins. Co. v. U.S. Dist. Court , 881 F.2d 1486, 1492 (9th Cir. 1989), and originally found in 8 John Henry Wigmore, Evidence in Trials at Common Law § 2292, 554 (John T. McNaughton ed. 1961) ) (emphasis added).
¶ 28 The Ninth Circuit, when adopting the same common law attorney-client privilege, clarified that the eight elements create a privilege that is limited to communications made by the client in confidence and advice given by the attorney in response thereto. In re Fischel , 557 F.2d at 211. The limitation is based on furthering the privilege's purpose of "protect[ing] and foster[ing] the client's freedom of expression," as the privilege was never intended "to permit an attorney to conduct his client's business affairs in secret." In re Fischel , 557 F.2d at 211. While the privilege protects the confidential information a client shares with his attorney and the legal advice an attorney shares with her client, the privilege does "not conceal everything said and done in connection with an attorney's legal representation of a client in a matter." In re Fischel , 557 F.2d at 212.
¶ 29 In this case, we must determine whether a communication from an attorney to her client regarding the date of a hearing is "advice given to the client in the course of professional employment" and thus protected by the attorney-client privilege. The Ninth Circuit and other jurisdictions have analyzed *194 the same issue and consistently hold that such communication is not privileged. Freeman , 519 F.2d at 68-69 (stating that requiring an attorney to relay whether he advised his client of the court's order to appear "was not of a confidential nature and hence was not protected by the attorney-client privilege").[1] The **234 rationale behind those decisions is that, in passing along the information, the attorney simply acts as an agent-a "mere conduit"-for the court. Austin , 934 S.W.2d at 675. Those courts reason that a hearing date is not confidential information encompassing the client's legal issues. Woodruff , 383 F.Supp. at 698. Accordingly, they hold that the attorney-client privilege does not protect an attorney's testimony regarding whether she told a defendant about a hearing. Ogle , 682 P.2d at 269.
¶ 30 I agree with the rationale employed by those courts and would hold that an attorney conveying the date of a hearing to her client is not "advice" protected by the attorney-client privilege. It is common practice for the court to notify counsel of a hearing and expect counsel to, in turn, notify her client of the proceeding. The date of a hearing is publicly available information that the attorney receives from the court, a third party. The date of a hearing does not encompass a client's confidential information or an attorney's advice in response thereto. Prohibiting disclosure of such information by precluding an attorney from ever being "examined" is contrary to the plain language of § 26-1-803(1), MCA. Colorado has a similar statute, providing that, "An attorney shall not be examined without the consent of his client as to any communication made by the client to him or his advice given thereon in the course of professional employment ...." Colo. Rev. Stat. § 13-90-107(1)(b) (emphasis added). In People v. Williamson , 839 P.2d at 520, the Colorado Court of Appeals analyzed the statutory attorney-client privilege and permitted an attorney's testimony regarding whether he advised his client of the court's order to appear at trial. The court reasoned that such communications were not confidential in nature and that in relaying the court's order, the attorney served "merely as a conduit for transmission of a message." Williamson , 839 P.2d at 520 (quoting Hall , 346 F.2d at 882 ). That court did not place undue emphasis on the term "examined," and neither should we. In Montana, under § 26-1-803(1), MCA, an attorney cannot be "examined" as to two distinct types of information, neither of which encompass an attorney notifying her client of the date of a hearing.
¶ 31 In this case, Sweeney represented McClanahan in a drug charge. The District Court released McClanahan pending trial, provided he would appear at all hearings. The District Court scheduled **235 McClanahan's final pretrial conference for October 19, 2016. One day before the scheduled hearing, on October 18, 2016, Sweeney filed an unopposed motion to continue the final pretrial conference and trial, on the grounds that she needed additional time to prepare for trial and/or complete plea negotiations. The District Court granted Sweeney's motion and rescheduled McClanahan's final pretrial conference for November 16, 2016. The District *195 Court did not personally notify McClanahan of the new date; the court does not require defendants to be personally present when hearing dates are set nor does it require defendants to acknowledge that they received notice of hearing dates.
¶ 32 McClanahan failed to appear at his final pretrial conference on November 16, 2016. The State subsequently charged McClanahan with bail-jumping and the District Court appointed attorney Sheehy to represent him in that proceeding. A necessary element of bail-jumping is whether McClanahan had notice of the date of the final pretrial conference. To prove that element, the State seeks to examine Sweeney, who does not represent McClanahan in the bail-jumping charge, about whether she told McClanahan about the final pretrial conference.[2] The District Court concluded, "Ms. Sweeney is only required to testify as to whether she told the Defendant about the hearing on November 16, 2016." Asking Sweeney to testify as to whether she conveyed the date of the final pretrial conference to McClanahan is not asking her to divulge any "advice" she provided to McClanahan. The District Court is only requiring her to testify as to whether she, acting as a mere conduit, conveyed publicly available information, provided by the court, to her client. The limited nature of the permitted inquiry ensures that Sweeney will not be compelled to testify as to any privileged information. Sweeney's testimony regarding whether she told McClanahan the date of the final pretrial conference is not protected by the attorney-client privilege and I would hold that the District Court correctly interpreted the law.
¶ 33 I am mindful of the Court's concern that the State is utilizing **236 Sweeney, McClanahan's attorney in the drug charge, to prove an essential element of the bail-jumping charge. Opinion, ¶¶ 14-15. I do not commend the practice of calling a defendant's prior counsel as a witness in a bail-jumping trial. The State should make all attempts to avoid the need for such testimony. However, I can find no authority supporting the Court's conclusion that requiring Sweeney to testify would violate her duty of loyalty to her client, and therefore cannot agree. Opinion, ¶ 14 (citing Krutzfeldt Ranch , ¶ 31 ). While Krutzfeldt Ranch emphasizes the importance of an attorney's duty of loyalty to her current client in assessing conflicts of interest, it does not address the situation at hand. Compelling Sweeney's testimony in the separate bail-jumping proceeding, in which she does not represent McClanahan, does not materially interfere with her function as an advocate in the drug proceeding nor does it deprive McClanahan of a fair trial in either proceeding. Requiring Sweeney to testify as to whether she informed McClanahan of the November 16, 2016, final pretrial conference places her in an uncomfortable and admittedly unfortunate position, but I cannot find a way in which it illegally infringes upon the duties she owes to McClanahan as his attorney in the drug charge.
¶ 34 Considering § 26-1-803(1), MCA, in its entirety, I conclude that the attorney-client privilege does not protect an attorney's statements to her client regarding the date, time, and place of a hearing. I would hold that the District Court appropriately ordered Sweeney to testify "only ... as to whether she told the Defendant about the hearing on November 16, 2016."
Justice Beth Baker joins in the dissenting Opinion of Justice McKinnon.

See also , e.g. , United States v. Uptain , 552 F.2d 1108, 1109 (5th Cir. 1977) (holding that counsel's "message to his client concerning the date of trial was not a privileged communication"), cert. denied , 434 U.S. 866, 98 S.Ct. 202, 54 L.Ed.2d 142 (1977) ; In re Grand Jury Proc. , 568 F.2d at 557 (holding that "communications by a defense counsel to the client ... regarding the time and place of trial are not confidential and therefore are not protected by the attorney-client privilege"), cert denied , Black Horse v. United States , 435 U.S. 999, 98 S.Ct. 1656, 56 L.Ed.2d 90 (1978) ; Bourassa , 411 F.2d at 74 (holding that former counsel's testimony that he told the defendant to be present at trial was not within the attorney-client privilege because '[r]elating such notice to the client was counsel's duty as an officer of the court'), cert. denied , 396 U.S. 915, 90 S.Ct. 235, 24 L.Ed.2d 192 (1969) ; Hall , 346 F.2d at 882 (holding that counsel relaying the court's order to the defendant was not 'in the nature of a confidential communication' and emphasizing that counsel has "a duty to relay the instructions to his client in his capacity as an officer of the court"), cert. denied , 382 U.S. 910, 86 S.Ct. 250, 15 L.Ed.2d 161 (1965) ; Woodruff , 383 F.Supp. at 698 ; Austin , 934 S.W.2d at 674-75 ; Downie , 888 P.2d at 1308 ; In re Adoption of A.S.S. , 907 P.2d at 917 ; People v. Williamson , 839 P.2d 519, 520 (Colo. Ct. App. 1992) ; Korff v. Indiana , 567 N.E.2d 1146, 1148 (Ind. 1991), cert. denied , 502 U.S. 871, 112 S.Ct. 206, 116 L.Ed.2d 164 (1991) ; Watkins v. Florida , 516 So.2d 1043, 1046 (Fla. Dist. Ct. App. 1987), cert. denied , 523 So.2d 579 (Fla. 1988) ; Ogle , 682 P.2d at 269.

I believe it is significant that the court appointed Sheehy as counsel in the bail-jumping proceeding and that Sweeney did not represent McClanahan in both the underlying drug charge and the bail-jumping charge. While not raised or argued by Sweeney, the advocate-witness rule prohibits an attorney from appearing as both a witness and an advocate in the same litigation. See United States v. Prantil , 764 F.2d 548, 552-53 (9th Cir. 1985). Sweeney has not argued that the advocate-witness rule applies to these proceedings or that the provisions of M. R. Pro. Cond. 3.7, concerning a lawyer called as a witness, are implicated.